The plaintiff, Gordon, brought this action, on a creditor's bill, against the debtor, Gorman, and two mortgage holders, Metropolitan Life Insurance Company and National Bank of Commerce of Birmingham. After an ore tenus hearing, the trial court entered judgment against the plaintiff. We affirm.
We examine the judgment below and the evidence in light of the ore tenus rule, where every presumption is indulged in favor of the trial court's judgment. Martin v. Slayton,428 So.2d 23, 25 (Ala. 1983); Shepherd *Page 853 Realty v. Winn-Dixie Montgomery, 418 So.2d 871, 874 (Ala. 1982).
The judgment reads as follows:
"This action came on to be heard and considered by the Court and was submitted on the pleading and testimony and evidence presented in open court.
"The Plaintiff, Ruby R. Riddle Gordon, a judgment creditor of the Defendant, Leon R. Gorman, Jr., asserts claims here against the debtor, the debtor's wife, Teddye S. Gorman, and the Defendants, Metropolitan Life Insurance Company and National Bank of Commerce, seeking to have a deed whereby Mrs. Gorman alone took title to a residence declared a conveyance to defraud a creditor and, further, to have the debtor declared the equitable owner of the residence. The Plaintiff also seeks to have the Court declare mortgages held by Metropolitan Life and National Bank of Commerce declared conveyances to defraud a creditor. Additionally, the Plaintiff seeks a sale for division to satisfy the Plaintiff's judgment lien.
"It is alleged and contended that Metropolitan Life, the holder of the first mortgage on the property, and National Bank of Commerce, the holder of the second and third mortgages on the property, had notice that title was taken in the name of the wife for the purpose of defrauding the Plaintiff and other creditors.
"Default judgment has been entered by the Register of the Court against Metropolitan Life for its failure to appear after having been served with the summons and complaint in this action.
"It has also been shown that the debtor Gorman has been adjudicated a bankrupt during the pendency of this action and that the Bankruptcy Court has given the Plaintiff leave to proceed to pursue her claim against the property in the State court.
"Similar claims as to those set forth above have been made as to antiques owned by Mrs. Gorman and stock of a corporation. The Plaintiff has acknowledged in open court that these claims are mooted by events since the filing of the action.
"The debtor Gorman and Mrs. Gorman were present during the trial of this action but were not represented by counsel at such time and did not participate in the trial.
"It has been shown that the Plaintiff obtained a judgment in the Circuit Court of this Circuit against Leon R. Gorman, Jr. in the sum of $25,012.23 on February 29, 1980 which was duly recorded on April 1, 1980 in the Probate Office of Jefferson County. According to the averments of the complaint, the note was executed in 1969. Mr. and Mrs. Gorman married in 1971. At that time, Mrs. Gorman owned a residence in the Roebuck section of Birmingham of an unspecified value. Thereafter, at an undisclosed time, Mrs. Gorman sold this residence and purchased another residence in Roebuck, apparently in her name alone.
"Thereafter, the Roebuck residence was sold and, on November 20, 1971, Mr. and Mrs. Gorman purchased and took title jointly to a residence in the Cherokee Bend Subdivision of Jefferson County for the consideration of $19,500 and the assumption of a $55,000 mortgage.
"In 1975, Mr. and Mrs. Gorman purchased and took title jointly to a vacant lot in the Cherokee Bend Subdivision for the purchase price of $35,000. This lot was later sold in July 1976 for a consideration of $40,000.
"On August 2, 1976, Mr. and Mrs. Gorman sold and conveyed title to the Cherokee Bend residence for a consideration of $67,355 and the assumption of the existing mortgage. On the same date, Mrs. Gorman (alone) purchased and took title to a residence in the Brookhill Forest Subdivision (called the Locksley Drive house) for the consideration of $100,000 and the granting of $125,000 in first and second mortgage loans. Thereafter, on June 20, 1978, Mrs. Gorman sold and conveyed the Locksley Drive residence for a consideration of $126,555 and the assumption of an existing mortgage. Mr. Gorman, as husband, joined in on the deed.
"On the same date as the sale of the Locksley Drive residence, to-wit, June 20, 1978, Mrs. Gorman (again alone) purchased *Page 854 
and took title to a residence in the Forest Glen Subdivision of Jefferson County for the consideration of $175,000, including a $140,000 purchase money mortgage to United Federal Savings 
Loan Association. This mortgage was thereafter transferred to the Defendant, Metropolitan Life Insurance Company and is one of the mortgages involved in this controversy. The Forest Glen residence is the property made the basis of this action.
"The evidence shows that during the latter years of these events (1976-1978), Mr. Gorman provided the great majority of the earnings for the family. Mrs. Gorman operated an antique business during such years but realized little or no profit from it. On June 22, 1978, Mr. Gorman and his wife borrowed $65,000 from the National Bank of Commerce and executed a note and mortgage on the Forest Glen residence in the sum of $91,487.03, including interest, to secure the debt. Additional security for this loan included shares of stock in a corporation. Thereafter, on December 18, 1979, Mr. Gorman and his wife executed a subsequent note and mortgage to National Bank of Commerce in the sum of $26,896.14. On February 26, 1980, National Bank of Commerce filed for record a release and satisfaction of the $91,487.03 mortgage on the Forest Glen property. The evidence has shown, without dispute, that such debt had not been paid and that the release and satisfaction was executed and recorded in error. The error was discovered and the Bank thereafter filed for record on May 23, 1980 a document entitled Affidavit to Reinstate the Mortgage Erroneously Satisfied of Record.
"The Plaintiff's judgment was recorded and became a lien on April 1, 1980 during the interval between the Bank's recorded satisfaction and the recording of the Affidavit to Reinstate the Mortgage.
"The mortgages held by National Bank of Commerce were thereafter foreclosed by the Bank in the summer of 1981, the date of which was not shown. The Bank was the purchaser of the Forest Glen property at the foreclosure sale, subject, presumably, to the first mortgage transferred to Metropolitan Life Insurance Company.
"As stated, the issues here involve title to the Forest Glen residence and the validity of the first mortgage on the property to Metropolitan Life and the second and third mortgages to the Bank.
"Conveyances to hinder, delay or defraud a creditor are void. Section 8-9-6, Code of Alabama 1975; Fleming v. Kirkland,226 Ala. 222, 146 So. 384 (1933).
"The concurrence of three elements is essential before a conveyance can be declared fraudulent under the Code section cited. It must be shown that there is: (1) a creditor to be defrauded, (2) a debtor intending to defraud, and (3) a conveyance of the property out of which the creditor could have realized his claim or some portion thereof. Roddam v. Martin,285 Ala. 619, 235 So.2d 654 (1970).
"From the facts here, there is no question but that the Plaintiff was an existing creditor of Gorman at the time of the purchase of the Forest Glen residence in the name of his wife and that there was a conveyance of the property out of which the Plaintiff could have satisfied her claim or some portion of it.
"The actionable fraud may be actual fraud or what is termed constructive fraud. Smith v. Wilder, 270 Ala. 637,120 So.2d 871 (1960). Actual fraud denotes the actual mental operation of intending to defeat or delay the rights of the creditor. Constructive fraud, on the other hand, is based on facts and circumstances which the courts have said constitute legal fraud irrespective of actual intent. The term `constructive fraud' is generally used in referring to those instances where a grantor, indebted at the time, conveys property on a good, as distinguished from a valuable, consideration. Such conveyances are frequently referred to simply as voluntary conveyances.Smith v. Wilder, supra.
"When a husband conveys certain property to his wife and that conveyance is attacked as a fraud on the husband's existing creditors, the wife bears the burden of *Page 855 
proof that the conveyance was based on a valuable consideration, substantial and not merely nominal. The wife has the responsibility of proving the bona fide character of the underlying transaction. Gurley v. Blue [Rents] Rinse, Inc.,383 So.2d 531 ([Ala.] 1980).
"Here, there is no question but that Mrs. Gorman owned a residence of her own in 1971. Thereafter, Mr. and Mrs. Gorman owned jointly the residence in the Cherokee Bend Subdivision. When they sold this residence, an equity of $67,355 was realized by them jointly. Only two months prior, Mr. and Mrs. Gorman had jointly received approximately $40,000 from the sale of a vacant lot. On the same date that the Cherokee Bend residence was sold in August 1976, Mrs. Gorman alone took title to the Locksley Drive residence with an equity of $100,000. This is the first suspect conveyance. Approximately two years later, the Locksley Drive residence was sold by Mrs. Gorman with an equity of $126,555 and the Forest Glen was purchased by Mrs. Gorman with only a $35,000 equity. This property is in controversy here and it is this property upon which Metropolitan Life holds the first mortgage and National Bank of Commerce holds title subject to redemption by virtue of its foreclosure in 1981.
"It is clear that when Mr. and Mrs. Gorman sold the Cherokee Bend residence and the vacant lot and Mrs. Gorman acquired title alone in the Locksley Drive residence, Mr. Gorman conveyed property out of which the Gordon claim could have been realized. The result was a voluntary conveyance by Mr. Gorman to Mrs. Gorman based upon other than a valuable consideration. Mr. Gorman is due to be declared the owner of an undivided one-half interest in the Locksley Drive residence and, thereafter, the Forest Glen residence that is involved here.
"Metropolitan Life holds the first mortgage on the Forest Glen residence. The Plaintiff contends that this mortgage was a fraudulent conveyance and that such claim has been adjudicated by Metropolitan's default. The Court agrees with this conclusion, but the Plaintiff's lien must first be tested against the National Bank of Commerce mortgages which have been foreclosed.
"The mortgages to National Bank of Commerce were executed on June 22, 1978 and on December 18, 1979. These sums were paid by the Bank to the Gormans in consideration of their executing and delivering their notes and mortgages. The consideration paid by the Bank was both good and valuable, and there has been no evidence presented to show a fraudulent intent on the part of the Bank or its officials nor has evidence been shown of some fact or facts calculated to put the Bank on inquiry which, if investigated, would have led to Gorman's fraudulent intent.
"A creditor cannot take advantage of a mortgage satisfied in error unless he relied on the satisfaction of the mortgage.Adler v. Interstate Trust Banking Co., 166 Miss. 215,146 So. 105, 87 A.L.R. 347. In the case here, there has been no evidence that the Plaintiff relied on the satisfaction of the mortgage at the time she recorded her judgment and a mortgage that has been satisfied of record by mistake may be expunged from the record and the mortgage reinstated where such relief will not prejudice the rights of third or innocent persons.Taylor v. Jones, 280 Ala. 329, 194 So.2d 80 (1967).
"Based upon these considerations, the Court concludes that the mortgages to National Bank of Commerce are not due to be set aside on the Plaintiff's complaint.
"The posture of the parties and their contentions are thus:
"Gorman is declared here to be the owner of an undivided one-half interest in the Forest Glen house upon which the Plaintiff's judgment lien attached on April 1, 1980. This judgment lien is subordinate to the National Bank of Commerce mortgages which became prior liens in 1978 and 1979 and which ripened into title in the Bank by its foreclosures in 1981. This foreclosure extinguished the Plaintiff's judgment lien against the Forest Glen house. *Page 856 
"The Bank contends that Metropolitan's default and resulting adjudication that its first mortgage has been declared void as to the Plaintiff results in the first mortgage being declared void as to the Bank as well.
"A fraudulent conveyance which is void as to one creditor is void as to all existing creditors on the date the conveyance was made. Continental Insurance Co. v. Dotson, 260 Ala. 499,70 So.2d 796 (1954). The fraudulent conveyance applicable to this issue was the United Federal Savings Loan Association mortgage (transferred to Metropolitan) executed on June 20, 1978. It was on June 22, 1978 the Bank made its first loan of $65,000 and became the holder of its second mortgage and, thereafter, in 1979, the holder of its third mortgage. The Bank was not an existing creditor on the date the Metropolitan mortgage was executed. Moreover, the evidence shows that the Bank had actual knowledge of the Metropolitan mortgage and knowingly made its loans notwithstanding such knowledge. For such reasons, the Court concludes that the mortgage held by Metropolitan Life Insurance Company is not void as to National Bank of Commerce who is now the owner of the property.
"Based upon the foregoing, it is ORDERED, ADJUDGED and DECREED by the Court that the complaint and claims of the Plaintiff against the Defendants are denied. The costs of this action are taxed to the Plaintiff."
After a careful review of the entire record, we are in agreement with the trial court's findings and will not disturb them. Accordingly, the judgment below is due to be and is hereby affirmed, and the trial court's opinion is adopted as our own.
AFFIRMED.
FAULKNER, ALMON and ADAMS, JJ., concur.
TORBERT, C.J., concurs in the result.