In re Bernice Elizabeth HAAS;  Thomas
Milton Haas, Debtors.

Thomas Milton HAAS;  Bernice Elizabeth
Haas, Plaintiffs–Appellees,

v.

INTERNAL REVENUE SERVICE,
Defendant–Appellant,

United States Small Business
Administration,
Defendant,

Secor Bank, Defendant–Appellee.

No. 93–6381.

United States Court of Appeals,
Eleventh Circuit.

Sept. 13, 1994.

Gary R. Allen, Linda E. Mosakowski, Michael L. Paup, Edward T. Perelmuter, David English Carmack, Tax Div., Dept. of Justice, Washington, DC, for appellant.

Lawrence B. Voit, Silver & Voit, Mobile, AL, for B.E. & T.M. Haas.

Thomas P. Ollinger, Jr., Fernandez, Ollinger & Combs, Mobile, AL, for Secor Bank.

Before ANDERSON and BIRCH, Circuit Judges, and ATKINS *, Senior District Judge.

ANDERSON, Circuit Judge:

## I. INTRODUCTION

At issue in this case are the relative priorities to be accorded a reinstated mortgage lien and a competing federal tax lien where the federal tax lien arose prior to the reinstatement of the mortgage lien. The bankruptcy court, applying Alabama law, held that the reinstated mortgage lien had priority over the federal tax lien. The district court, following the reasoning of the bankruptcy court, affirmed. For the reasons set forth below, we reverse.

## II. FACTS

On January 4, 1979, Thomas M. Haas and Bernice E. Haas ("Debtors") executed a mortgage on their homestead in favor of Home Savings & Loan Association (a predecessor in interest to Secor Bank ("Secor")) as security for a loan of $140,994.57. The homestead was valued at $225,000. On March 31, 1986, Alabama Federal Savings & Loan Association recorded a release of the mortgage, stating that the bank was discharging its lien on the homestead because the underlying indebtedness had been satisfied in full. The parties agree that the mortgage lien was released in error. Debtors had not in fact satisfied the underlying indebtedness.

---

* Honorable C. Clyde Atkins, Senior U.S. District Judge for the Southern District of Florida, sitting by designation.

Subsequent to the recordation of the release, the Internal Revenue Service ("IRS") filed notices of federal tax liens on the homestead totalling $506,523.24.[1] Debtors became aware of the erroneous release at least by April 1990. Debtors filed a petition for Chapter 11 on October 7, 1991. In a later filed adversary proceeding, Debtors sought a ruling on the extent and validity of the liens on the homestead.

The bankruptcy court, exercising its equitable powers, reinstated the erroneously discharged mortgage on May 27, 1992. Applying Alabama law, the court concluded that, absent reliance by a subsequent creditor, a mortgage that has been satisfied by mistake may be expunged from the record by a court of equity and reinstated where such relief will not prejudice the rights of third or innocent persons. The court determined that the IRS had not detrimentally relied upon the erroneous release. Thus, the court concluded that the reinstated lien of Secor had priority over the federal tax lien.

The district court affirmed the bankruptcy court with respect to this issue, following its analysis. The district court specifically relied upon the bankruptcy court's finding of fact that the IRS, Secor, and the Debtors had continued to behave as if the mortgage still existed even after the erroneous satisfaction was entered. For the reasons that follow, we reverse.

## III. STANDARD OF REVIEW

Because the district court in reviewing the decision of a bankruptcy court functions as an appellate court, we are the second appellate court to consider this case. *Capital Factors, Inc. v. Empire for Him, Inc.*, 1 F.3d 1156, 1159 (11th Cir.1993). Thus, this Court's review with regard to determinations of law, whether made by the bankruptcy court or by the district court, is de novo. *Equitable Life Assurance Soc. v. Sublett*, 895 F.2d 1381, 1383 (11th Cir.1990). The district court makes no independent factual findings; accordingly, we review solely the bankruptcy court's findings of fact under the "clearly erroneous" standard. *Rush v. JLJ Inc.*, 988 F.2d 1112, 1116 (11th Cir.1993); Bankr.Rule 8013; Bankr.Rule 7052.

## IV. DISCUSSION

The IRS mounts two attacks on the judgment below which represent independent and alternative bases for reversing the judgment of the district court. First, the IRS argues that 26 U.S.C. § 6323 accords the government the status of a hypothetical lien creditor, thus making actual notice of the erroneously released mortgage irrelevant. Second, the IRS asserts that the regulations accompanying section 6323 forbid application of Alabama's relation back principle to award a mortgage lien priority over the federal tax lien. For the reasons that follow, we conclude that each of these theories is sufficient to cause us to remand this case to the district court with instructions to enter judgment for the IRS.

### A. *Hypothetical judgment lien creditor*

Section 6321 directs that a tax lien shall arise upon "all property and rights to property" of a taxpayer neglecting to pay taxes owed.[2] Moreover, the tax lien attaches to property acquired after the tax lien arises. Pursuant to section 6322, this lien arises "at the time the assessment is made." "The overriding purpose of the tax lien statute obviously is to ensure prompt revenue collection." *United States v. Kimbell Foods, Inc.*, 440 U.S. 715, 734–35, 99 S.Ct. 1448, 1462, 59 L.Ed.2d 711 (1979). Thus, "[i]t has long

---

1. On October 13, 1987, Thomas Haas pled guilty to 26 U.S.C. § 7203 for willful failure to pay income and employment taxes for certain periods in the years 1977 through 1985. As a condition of probation, Haas was required to make monthly payments to the IRS to be applied to his income and employment tax liability. The liens at issue encompass Debtor's income tax liabilities for certain quarters of 1980 through 1986.

2. The statute provides:

If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person. 26 U.S.C. § 6321.

been recognized that liens to guarantee payment of taxes are an important element of the sovereign's taxing power." *United States v. Second National Bank of North Miami*, 502 F.2d 535, 545 (5th Cir.1974), *cert. denied*, 421 U.S. 912, 95 S.Ct. 1567, 43 L.Ed.2d 777 (1975).[3] Despite this overriding objective, section 6323 nevertheless operates to protect holders of perfected security interests from unfiled tax liens or so-called "secret liens." *See Rice Investment Co. v. United States*, 625 F.2d 565, 568 (5th Cir.1980).[4] Thus, section 6323 mandates that notice of the taxing authority's lien "shall be filed" in the public records before it operates as notice effective against any holder of a security interest as that term is defined by section 6323. 26 U.S.C. § 6323(f). The filing requirement is critical: even a holder of a security interest who has actual knowledge of an unfiled tax lien will prevail over the government. 26 U.S.C. 6323(a). *See United States v. McDermott*, —— U.S. ——, ——, ——, 113 S.Ct. 1526, 1528, 1530, 123 L.Ed.2d 128 (1993) ("under the language of § 6323(a) ('shall not be valid as against any ... judgment lien creditor until notice ... has been filed'), the filing of notice renders the federal tax lien extant for 'first in time' priority purposes....").

As a starting point, state law governs the inquiry of Haas' interest in "property or rights to property." *Aquilino v. United States*, 363 U.S. 509, 80 S.Ct. 1277, 4 L.Ed.2d 1365 (1960); *United States v. Brosnan*, 363 U.S. 237, 80 S.Ct. 1108, 4 L.Ed.2d 1192 (1960); *United States v. Bess*, 357 U.S. 51, 78 S.Ct. 1054, 2 L.Ed.2d 1135 (1958). "This follows from the fact that the federal statute 'creates no property rights but mere-

ly attaches consequences, federally defined, to rights created under state law.'" *United States v. National Bank of Commerce*, 472 U.S. 713, 722, 105 S.Ct. 2919, 2925, 86 L.Ed.2d 565 (1985) (quoting *United States v. Bess*, 357 U.S. 51, 55, 78 S.Ct. 1054, 1057, 2 L.Ed.2d 1135 (1958)). Alabama classifies itself as a "title" state with regard to mortgages. Thus, "[e]xecution of a mortgage passes legal title to the mortgagee. The mortgagor is left with an equity of redemption, but upon payment of the debt, legal title revests in the mortgagor." *Trauner v. Lowrey*, 369 So.2d 531, 534 (Ala.1979) (citations omitted). A mortgage, though not recorded, is valid and passes title as between the parties. *See Murphree v. Smith*, 291 Ala. 20, 277 So.2d 327, 329 (1973); *Alexander v. Fountain*, 195 Ala. 3, 70 So. 669 (1916); *Simon v. Sewell*, 64 Ala. 241 (1879). Thus, under Alabama law, the property interest held by Haas is an equitable right of redemption. This is a valuable property interest for it may be conveyed by the mortgagor, and it allows a mortgagor, who has retained possession of the subject property, to be possessed of legal title against all of the world except the mortgagee or its assignee. *See Trauner v. Lowrey*, 369 So.2d 531, 534 (Ala.1979); *Jones v. Butler*, 286 Ala. 69, 237 So.2d 460, 462 (1970). We therefore conclude that Haas had "property" and "rights to property" under 26 U.S.C. § 6321 to which the tax lien could attach. *See Southern Bank of Lauderdale County v. IRS*, 770 F.2d 1001, 1009–10 (11th Cir.1985), *cert. denied*, 476 U.S. 1169, 106 S.Ct. 2890, 90 L.Ed.2d 977 (1986).

Having ascertained that Haas had "property" and "rights to property" sufficient for attachment of the tax lien, federal law gov-

**3.** In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), this Court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

**4.** As articulated by the Court in *Fore*:
The predecessor to 6323 was first enacted by Congress in 1912 in order to protect mortgagees, purchasers and judgment creditors against a secret lien for assessed taxes and to postpone the effectiveness of the tax lien as against these interests until the tax lien was filed.
*Fore v. United States*, 339 F.2d 70, 72 (5th Cir. 1964), *cert. denied* 381 U.S. 912, 85 S.Ct. 1532,

14 L.Ed.2d 433 (1965) (citing H.R.Rep. No. 1018, 62d Cong., 2d Sess.). With respect to persons covered by the notice-filing provisions, prior law deemed irrelevant for priority purposes actual notice or knowledge of the federal tax lien. *See* Frank R. Kennedy, *The Relative Priority of the Federal Government: The Pernicious Career of the Inchoate and General Lien*, 63 Yale L.J. 905, 921 n. 99 (1954). *See, e.g., F.P. Baugh, Inc. v. Little Lake Lumber Co.*, 297 F.2d 692, 694 (9th Cir. 1961), *cert. denied*, 370 U.S. 909, 82 S.Ct. 1256, 8 L.Ed.2d 404 (1962); *United States v. Beaver Run Coal Co.*, 99 F.2d 610, 612–13 (3d Cir.1938).

erns the priority to be accorded the competing liens.[5] *Aquilino v. United States*, 363 U.S. 509, 513–15, 80 S.Ct. 1277, 1280–81, 4 L.Ed.2d 1365 (1960) (Attachment of federal lien depends on whether "property" or "rights to property" exist under state law; however, priority of the federal lien depends on federal law). Two basic principles govern the adjudication of priority of competing liens: (i) "the first in time is the first in right"; and (ii) a federal tax lien is superior to a nonfederal lien that is inchoate.[6] *Atlantic States Construction, Inc. v. Hand, Arendall, Bedsole, Greaves and Johnston*, 892 F.2d 1530, 1534 (11th Cir.1990). The Federal Tax Lien Act identifies several distinct situations in which a security interest may have priority over a federal tax lien, only one of which is relevant to this case: where the security interest exists prior to the IRS's filing of notice of the tax lien. 26 U.S.C. § 6323(a). We discuss below the process of perfection in the federal sense which is controlled by section 6323(h)(1).

Secor argues that its security interest is a prior extant perfected security interest and thus should prevail. Under 26 U.S.C. § 6323(a), a federal tax lien "shall not be valid as against any purchaser, holder of a security interest, mechanic's lienor, or judgment lien creditor until notice thereof ... has been filed by the Secretary." To ascertain whether Secor is a "holder of a security interest," we turn to federal law for guidance. Unlike the term "property" which is left to state law for definition, the term "security interest" is defined by the Act and thus presents a question of federal interpretation. Section 6323(h)(1) provides as follows:

The term 'security interest' means any interest in property acquired by contract for the purpose of securing payment or performance of an obligation or indemnifying against loss or liability. A security interest exists at any time (A) if, at such time the property is in existence and the interest has become protected under local law against a subsequent judgment lien arising out of an unsecured obligation, and (B) to the extent that, at such time, the holder has parted with money or money's worth.

26 U.S.C. § 6323(h)(1).

To come within the protection of § 6323(a), a holder of a security interest must establish four conditions: (1) that the security interest was acquired by contract for the purpose of securing payment or performance of an obligation or indemnifying against loss; (2) that the property to which the security interest was to attach was in existence at the time the tax lien was filed; (3) that the security interest was, at the time of the tax lien filing, protected under state law against a judgment lien arising out of an unsecured obligation; and (4) that the holder of the security interest parted with money or money's worth. 26 U.S.C. § 6323(h)(1). *See Atlantic States Construction, Inc. v. Hand, Arendall, Bedsole, Greaves and Johnston*, 892 F.2d 1530, 1535 (11th Cir.1990). At issue in this appeal is whether the third condition was fulfilled, i.e., whether the security interest was protected under state law against a judgment lien arising out of an unsecured obligation at the time the tax lien was filed. Accordingly, we must first determine the protection that

**5.** Sections 6323(a) and (h)(1) govern priority in the instant case. That federal law controls priority has been established by Supreme Court cases, *United States v. Rodgers*, 461 U.S. 677, 683, 103 S.Ct. 2132, 2137, 76 L.Ed.2d 236 (1983); *Aquilino v. United States*, 363 U.S. 509, 513–15, 80 S.Ct. 1277, 1280–81, 4 L.Ed.2d 1365 (1960), and followed uniformly in the lower courts. *See Citizens State Bank v. United States*, 932 F.2d 490, 492 (6th Cir.1991); *Metropolitan National Bank v. United States*, 901 F.2d 1297, 1300 (5th Cir. 1990); *Dragstrem v. Obermeyer*, 549 F.2d 20, 22 (7th Cir.1977).

**6.** For a nonfederal lien to be considered choate, "the identity of the lienor, the property subject to

the lien and the amount of the lien must be established beyond any possibility of change or dispute." *Rice Investment Co. v. United States*, 625 F.2d 565, 568 (5th Cir.1980). *See United States v. Equitable Life Assur. Soc.*, 384 U.S. 323, 327, 86 S.Ct. 1561, 1564, 16 L.Ed.2d 593 (1966); *United States v. Pioneer American Ins. Co.*, 374 U.S. 84, 89, 83 S.Ct. 1651, 1655, 10 L.Ed.2d 770 (1963); *United States v. New Britain*, 347 U.S. 81, 84, 74 S.Ct. 367, 369, 98 L.Ed. 520 (1954). The choateness doctrine has continuing vitality except to the extent that it is supplanted by express provisions of the Federal Tax Lien Act. *Aetna Ins. Co. v. Texas Thermal Industries, Inc.*, 591 F.2d 1035, 1038 (5th Cir.1979).

state law accords a judgment lienor against an erroneously released mortgage.

■ Pursuant to Ala.Code § 35–10–28,[7] a mortgagee's recordation of satisfaction of a mortgage suffices to extinguish the lien of that mortgage. Nevertheless, compliance with the statutory recording formalities is not conclusive evidence of actual payment of the mortgage. *Bay Minette Production Credit Ass'n v. Citizens' Bank*, 551 So.2d 1046, 1048 (Ala.1989). Rather, mistaken satisfaction of a mortgage does not affect the validity of an unpaid secured note secured by a mortgage where no rights of innocent third parties have intervened. *Lacey v. Pearce*, 191 Ala. 258, 68 So. 46 (1915). Thus, where "a mortgage has been satisfied of record by mistake, a court of equity has jurisdiction to order the cancellation expunged from the record and to order the mortgage reinstated where such relief will not prejudice the rights of third or innocent persons." *Taylor v. Jones*, 280 Ala. 329, 194 So.2d 80, 84 (1967). Equitable reinstatement will not be undertaken where an innocent party has relied upon the erroneous release. *Gordon v. Gorman*, 436 So.2d 851, 855 (Ala.1983) ("A creditor cannot take advantage of a mortgage satisfied in error unless he relied on the satisfaction of the mortgage"). Reliance cannot be demonstrated where the party has notice of the mortgage. *Bay Minette, supra*, at 1048 ("There is no evidence that PCA relied on the cancellation, for it was entered on the record subsequent to PCA's recording its judgment lien"). This follows from Ala. Code § 35–4–90 which provides in pertinent part:

(a) All conveyances of real property, deeds, mortgages, deeds of trust or instruments in the nature of mortgages to secure any debts are inoperative and void as to purchasers for a valuable consideration, mortgagees and *judgment creditors without notice*, unless the same have been recorded before the accrual of the right of such purchasers, mortgagees or judgment creditors.

Ala.Code § 35–4–90 (emphasis supplied). Thus, a judgment creditor without notice who perfects a lien is protected against subsequently recorded instruments, regardless of the date of execution or delivery of those other instruments.[8] *Smith v. Arrow Transportation Co., Inc.*, 571 So.2d 1003, 1006 (Ala. 1990).

■ Having concluded that Alabama law would protect a judgment creditor without notice from an erroneously released lien, we must now determine whether the IRS may prevail in this case. With respect to those tax liens at issue in this case,[9] it is clear that any tax liens filed by the IRS before the time the IRS had actual knowledge that Secor's lien had been released by mistake would prevail over Secor's unperfected lien; with respect to these tax liens, the IRS would prevail under controlling federal law as discussed below and would also prevail even under Alabama law. However, in this case, some of the federal tax liens at issue were filed after the IRS had actual knowl-

---

**7.** Section 35–10–28 provides in pertinent part:

The satisfaction in full by any one of several joint mortgagees, or his successors or assigns, on the margin of the record, and properly attested by the probate judge, or his chief clerk, or the filing of a release by such party, properly notarized, acknowledging full satisfaction of any mortgage in the names of two or more persons jointly as mortgagees standing on the probate records of any county in this state, shall be sufficient to extinguish the lien of such mortgage.

Ala.Code § 35–10–28.

**8.** Secor argues that a judgment lienor is not protected under Alabama law because such a lienor does not rely upon the nonexistence of a mortgage. We reject this argument as contrary to Alabama law. The operative inquiry under

Alabama law is notice: a judgment creditor without notice is protected against an unrecorded instrument. *Department of Revenue v. Price-Williams*, 545 So.2d 7, 9 (Ala.1989) (holding that Alabama's Department of Revenue is a judgment creditor for purposes of § 35–4–90). Even were Secor correct in its assertion that Alabama disallows equitable reinstatement absent "reliance", we would be forced to reject such a purely equitable inquiry as contrary to the overriding federal scheme of priorities we discuss *infra*. *See Southern Bank of Lauderdale County v. IRS*, 770 F.2d 1001, 1009 (11th Cir.1985), *cert. denied*, 476 U.S. 1169, 106 S.Ct. 2890, 90 L.Ed.2d 977.

**9.** At issue in this case are tax liens filed from and after the time Secor's lien was released on the records. This includes liens filed both before and after the IRS had actual knowledge that the release of Secor's lien was mistaken.

edge, and thus we must address the question whether the IRS or Secor should prevail with respect to these tax liens.

As noted above, *see* n. 5 *supra*, it is well-established that federal law, not Alabama law, governs the priority of competing liens. This determination is governed by sections 6323(a) and (h)(1), quoted above. A properly filed federal tax lien will prevail over a prior lien which is unperfected in the federal sense, i.e., as the perfection process is defined in § 6323(h)(1) ("has become protected under local law against a subsequent judgment lien creditor").

In interpreting the phrase "protected under local law against a subsequent judgment lien," courts and commentators have determined the phrase is equivalent to being protected against a "lien creditor" as defined in U.C.C. § 9–301(3). Jacob Mertens, Jr., *Mertens Law of Federal Income Taxation* § 54A.23 at n. 4 (1993). From this generally accepted interpretation of section 6323(h)(1), it has often been said that courts have diverged in employing the lien creditor test, some applying a "subjective knowledge lien creditor" test and some applying a "hypothetical judgment lien creditor" test. As discussed more fully below, we conclude that the "hypothetical judgment lien creditor" test is the appropriate test, and furthermore we doubt that the cases often cited as applications of the other test actually so hold. The "hypothetical judgment lien creditor test" focuses on the protection state law gives to the security interest against other hypothetical lien creditors. The pertinent inquiry is whether the security interest is protected under local law against any hypothetical judgment lien creditor that might arise, regardless of whether the Government has knowledge of the competing nonfederal interest. *Dragstem v. Obermeyer*, 549 F.2d 20 (7th Cir.1977). By contrast, under the "subjective knowledge lien creditor test," the Government's knowledge becomes relevant. Thus, if the IRS obtains actual or constructive knowledge of the competing nonfederal interest prior to filing its federal tax liens, and if, under local law, a judgment lien creditor is protected only if he is without actual or constructive knowledge of a prior interest,

the tax lien is denied priority over the nonfederal interest. *See Mertens, supra,* at *id.*

We conclude that the "hypothetical judgment lien creditor test" articulated by the Seventh Circuit in *Dragstrem* represents the better rule, and we embrace *Dragstrem*'s reasoning. Conferring upon the IRS the status of a hypothetical judgment creditor accords with the language of Section 6323(h)(1) and the purposes of the Federal Tax Lien Act. Section 6323(h)(1) by its terms provides that a "security interest exists if the interest has become protected under local law against *a* subsequent judgment lien." 26 U.S.C. § 6323(h)(1) (emphasis supplied). This language is echoed in the Treasury Regulations which define a security interest. Treas.Reg. § 301.6323(h)–1 (1976). As a matter of statutory construction, the article "a" is often used in the sense of "any." *Black's Law Dictionary* 1 (6th ed. 1991). As explained by the Seventh Circuit in *Dragstrem*, the Federal Tax Lien Act

> does not put the government in the position of a competing holder of a security interest or judgment lien, but rather describes the *legal status* which security interests must obtain under state law in order to have priority over later filed or unfiled federal tax liens.

549 F.2d at 26 (emphasis in original) (internal quotation and citation omitted).

This interpretation accords with the central purposes underlying the Act: promoting certainty and stability in business affairs for secured creditors. *See Dragstrem, supra,* at 26. The certainty afforded results from the structure of the Act; where the security interest as defined under the Act qualifies for priority, this ends the inquiry. S.Rep. No. 1708, 89th Cong., 2d Sess., *reprinted in* 1966 U.S.Code Cong. & Admin.News 3722, 3723. In enacting the priority scheme of the Federal Tax Lien Act, Congress intended to select a fair and appropriate position in the spectrum of priorities for the IRS. Congress selected the time the IRS filed its federal tax lien. Significantly, Congress imposed *no* further conditions upon the IRS; the IRS need not have this kind of knowledge or that kind of notice or be innocent of anything.

The definitional scheme articulated by Congress obviates the need for a case-by-case inquiry into whether the IRS had "notice." Such an inquiry would undermine the certainty and stability afforded by the definitional framework, effectively denigrating a central policy under the Act without providing any countervailing benefit:

> This legislative policy would in no way be enhanced by a holding that a properly filed federal tax lien does not have priority over an unperfected security interest simply because the government has knowledge of the security interest before the tax lien is filed. Conversely, whatever the policy of the Uniform Commercial Code in making an exception as to priority when a lien creditor has knowledge of an unperfected security interest, this cannot apply to the tax lien situation as the government does not rely on any notice, actual or record, in making a determination to become a creditor, or to create and file a tax lien.... Indeed, one of the effects of the 1966 Act was to finally rebut the frequent secured party argument ... that a failure to file and hence perfect a security interest under the Uniform Commercial Code ought not to subordinate the security interest to the federal lien since the government does not

in any event rely on the records in becoming a creditor.

*Dragstrem*, 549 F.2d at 26 (citation and internal quotation omitted).

This absence of reliance by the IRS illustrates the futility of subjecting the IRS to the application of such an equitable concept. Even were the IRS to have notice or knowledge of a prior lien, the IRS could never "rely" upon such notice or knowledge. The IRS is an involuntary creditor; it does not make a decision to extend credit. This inheres in the nature of taxation. The IRS files because that is what the statute directs it to do. This filing fixes a clear and definite place for the IRS in the priority scheme. Nothing in the statute or the legislative history suggests that Congress contemplated that the IRS either should or would check the records prior to its filings.

As a practical matter, concepts such as "notice," "knowledge," and "reliance" are meaningless when applied to the IRS. Actual knowledge by a secured creditor of the IRS's lien prior to filing does not enhance the IRS's position vis-a-vis that creditor; neither should the IRS's notice of a lien prior to filing operate to diminish its position.[10]

---

**10.** Thus, in addition to the purposes of promoting certainty and stability, the definition of judgment lien creditor implicates another long-standing goal: uniformity. Our decision recognizes that the term "judgment lien creditor" must be interpreted in light of the overriding and long-established principle that federal law governs tax policy. In a decision prior to the enactment of the Federal Tax Lien Act, the Supreme Court explained the need for uniformity in defining "judgment creditor" required that the effect of the state's tax assessment on the federal priority question be determined according to federal law:

> A cardinal principle of Congress in its tax scheme is uniformity, as far as may be. Therefore, a "judgment creditor" should have the same application in all the states.

*United States v. Gilbert Associates*, 345 U.S. 361, 364, 73 S.Ct. 701, 703, 97 L.Ed. 1071 (1953). Thus, the Court concluded that the local taxing authority was not a "judgment creditor" in the federal sense and thus was not protected by the statute. Early legislative history supports this interpretation. The senate committee report discussing this aspect of federal tax law makes it plain that a person qualifying for judgment creditor status "will be entitled as such to the protection of this section irrespective of the designation [state law gives

to that person]" S.Rep. No. 1622, 83d Cong., 2d Sess., *reprinted in* 1954 U.S.Code Cong. & Admin.News 4621, 5224. We see no reason why if federal law should govern the definition of "judgment lien creditor" as that term is applied to creditors other than the IRS, a different result should obtain here.

There are several references in the provisions of subsection 6323(b), (c), and (d) allowing lien priority to be determined in accordance with state law for certain claimants, but no similar expressions for a section 6323(a) judgment lien creditor. The legislative history indicates that Congress was satisfied with the interpretations courts had historically given to the notice provisions of 6323(a) and chose not to disturb them. Its clear purpose in tying section 6323(b) and (c) protection to state law, however, was to override federal court decisions that had made these identified state property interests subordinate to federal tax liens. *United States v. Kimbell Foods, Inc.*, 440 U.S. 715, 720 n. 6, 99 S.Ct. 1448, 1454 n. 6, 59 L.Ed.2d 711 (1979). Uniformity was not an overriding concern when Congress allowed state law to control in these special cases because most states had moved in the direction of incorporating the provisions of the Uniform Commercial Code into their own laws. The rules controlling "judgment lien creditor" status were

Thus, we decline to adopt an equitable overlay to the statutory framework which would disadvantage the IRS as compared with every other creditor. *See Southern Bank of Lauderdale County v. IRS*, 770 F.2d 1001, 1009 (11th Cir.1985), *cert. denied*, 476 U.S. 1169, 106 S.Ct. 2890, 90 L.Ed.2d 977 (1986). *Accord First American Title Insurance Co. v. United States*, 848 F.2d 969, 972 (9th Cir.1988). Rather, we adopt the hypothetical judgment lien creditor test as consonant with the purposes of the Act of promoting certainty and stability, thereby effectuating Congressional intent to designate the appropriate position for the IRS in the spectrum of priorities. Accordingly, we conclude that the hypothetical judgment lien creditor test operates to put the IRS in the shoes of *any* subsequent judgment creditor,[11] including the most favorable shoes. Thus, if any subsequent judgment creditor could prevail over Secor, then the IRS prevails. Applying the hypothetical judgment lien creditor test in this case gives the IRS's claim priority over Secor's erroneously released mortgage because a class of judgment creditors without notice could prevail over Secor's interest.

Nor do we believe that the decisions in *United States v. Trigg*, 465 F.2d 1264 (8th Cir.1972), *cert. denied*, 410 U.S. 909, 93 S.Ct. 963, 35 L.Ed.2d 270 (1973), *United States v. Ed Lusk Const. Co.*, 504 F.2d 328 (10th Cir. 1974), and *United States v. Hunt*, 513 F.2d 129 (10th Cir.1975) which have been cited as an opposing line of cases actually hold to the contrary. Although these cases have been denominated as an alternative "line" of cases supporting application of the "subjective lien creditor test," as explained below, we doubt that this authority in fact constitutes a contrary "line" of authority. Even assuming the vitality of this competing "line," we would nevertheless conclude that *Dragstrem* represents the better reasoned approach.

In *Trigg*, the Eighth Circuit held that the federal tax lien at issue prevailed over a prior security interest in accounts receivable assigned to a bank. *Id.* at 1270. Because the bank failed to record the security agreement which created its security interest, the court concluded that the bank's interest never became perfected in the federal sense because filing was required to protect the security interest against third party creditors. *Id.* at 1269. Apart from the absence of filing, the court conducted no inquiry into whether the IRS had notice or knowledge of the bank's prior lien. Because there was no suggestion in *Trigg* that the IRS in fact had knowledge of the bank's lien prior to its filing, the court did not have to address the issue of the effect of such knowledge.[12] Consistent with our approach, the Eighth Circuit recognized that perfection is an inquiry to be governed by federal law. *Id.* at 1270.

In declining to subordinate a federal tax lien to a prior security interest in a contractor's right of payment held by a bank, the Tenth Circuit in *Lusk* refused to impute constructive notice to the government of the bank's lien. *Id.* at 330–31. The court held that there was no evidence tending to show that the IRS had knowledge of the prior lien, despite the fact that the IRS filed notice of its lien at one of the locations where the bank's lien had been filed.[13] *Id.* at 331.

---

presumably left undisturbed because the Uniform Commercial Code does not treat this category of creditors. *See* U.C.C. § 9–104(h).

11. As explained *infra*, *Manalis Finance Co. v. United States*, 611 F.2d 1270 (9th Cir.1980) is distinguishable.

12. Although the *Trigg* court in its discussion of the existence of a property interest quoted a state statute which contained language to the effect that a subsequent lien creditor without knowledge could prime an unperfected prior security interest, the court says nothing with respect to whether, under the federal priority scheme it outlines, such knowledge on the part of the IRS is relevant.

13. The definition of notice relied upon in *Lusk* was narrow, encompassing only actual knowledge. By contrast, under Alabama law, the definition of notice is broader, including not only actual knowledge but also constructive notice and inquiry notice. *See White v. Boggs*, 455 So.2d 820, 821–22 (Ala.1984) ("Whatever is sufficient to excite attention and put the party on his guard and call for inquiry is notice of everything to which the inquiry would have led"); *Alexander v. Fountain*, 195 Ala. 3, 70 So. 669 (1916) (actual notice equivalent to constructive notice). We cannot determine whether the court in *Lusk* might have adopted more tailored reasoning had they been faced with as broad a definition of notice as that under Alabama law.

Outlining the federal statutory scheme which makes the tax lien superior to claims under unprotected security interests, the court concluded that the bank's interest was unprotected because the bank filed locally but failed to file a financing statement in the office of the Secretary of State. *Id.* at 331. Although the opinion suggests that the bank's interest would have prevailed had the IRS had actual knowledge of the improperly filed lien, that statement is dicta because of the court's conclusion that the IRS in fact had no such knowledge.

The Tenth Circuit's decision in *Hunt* is similarly inapposite. Although the court suggested that the IRS's knowledge of a prior unrecorded judgment lien was significant in denying the IRS priority, that decision turned on an analysis of the "rights to property" acquired by the respective lienholders. 513 F.2d at 133. The court concluded that the IRS had not acquired superior property rights vis-a-vis another creditor because of the following circumstances which the court through pointed to the IRS's bad faith. *Id.* at 138. The IRS intentionally bypassed a known state court proceeding following actual notice by initiating a unilateral action in federal district court when the funds in question were in the sole possession of the state district court. *Id.* Because the garnished funds were not attachable by the IRS when they were already in the custody of the state court, and the IRS had not been denied its right to intervene in the state court proceedings pursuant to 26 U.S.C. § 7609 the federal court concluded that the IRS was estopped from asserting sufficient "rights to property" to maintain its action in federal court to foreclose its tax lien. *Id.* at 138–39. To read the court's reasoning to suggest anything contrary to our decision here would effectively render the court's rationale unclear. Significantly, the opinion does not undertake an analysis of or even cite to § 6323(h); thus, we conclude that it is not persuasive authority.

We also believe that the Ninth Circuit's decision in *Manalis Finance Co. v. United States,* 611 F.2d 1270 (9th Cir.1980) is distinguishable. *Manalis* did not involve the issue before us in the instant case—i.e. whether or not the competing prior private lien was perfected in the federal sense, i.e. pursuant to § 6323(h)(1). Rather, *Manalis* involved an issue raised by an IRS argument that its federal tax lien should supplant a concededly perfected prior private lien. It was not disputed that the prior private lien in *Manalis* was perfected; the IRS argument was that the federal tax lien could benefit from a state health care statute which rendered unenforceable as against a state tax lien any assignment of state health care reimbursements. A health care provider had assigned its accounts receivable to a lending institution, Manalis, which perfected its security interest. The state statute, however, provided that any assignment of state health care payments was unenforceable as against a state tax lien, thus in effect granting state tax liens a "superpriority" with respect to state health care payments. The Ninth Circuit held that the state statute did not purport to benefit a federal tax lien; the benefit was extended solely to state tax liens. The court rejected the IRS argument that, because the state tax lien could prevail, a hypothetical judgment lien creditor could prevail, and thus the IRS should prevail. In rejecting this argument, however, the court did not reject the hypothetical judgment lien creditor rule; rather, it distinguished *Dragstrem,* emphasizing that § 6323(h)(1) "describes the process of perfection," and that the prior security interest of Manalis was fully perfected in the federal sense, i.e. pursuant to § 6323(h)(1). Thus, the state tax lien prevailed over Manalis' prior perfected security interest, not because of any deficiency in the perfection of Manalis' lien, but because of an unique state statute embodying the exercise of state sovereignty over the disposition of the state's own health care payments. In contrast, the instant case does involve the process of perfection, and Secor's lien loses because it was not fully perfected in the federal sense, i.e. pursuant to § 6323(h)(1).[14]

---

**14.** To the extent any language in *Manalis* is inconsistent with our holding, and that in *Drag-* *strem,* it is dicta, and is unpersuasive.

The Sixth Circuit in *Citizens State Bank v. United States*, 932 F.2d 490 (6th Cir.1991) faced facts similar to those in this case. There, as here, a perfected security interest was mistakenly released. *Id.* at 491. The state law there, as here, provided an equitable right of reinstatement except as against parties without notice or knowledge. *Id.* at 493–94. Because the IRS lacked notice or knowledge, the federal tax lien prevailed. *Id.* at 494–95. The Sixth Circuit thus had no occasion to address the issue before us, the effect of the IRS's knowledge.

In *Metropolitan National Bank v. United States*, 901 F.2d 1297 (5th Cir.1990), the court expressly noted that it need not address the issue of the relevance of knowledge because the IRS had no actual knowledge of the improperly recorded deed of trust. *Id.* at 1301 n. 1. Like *Dragstrem*, it placed *Trigg* and *Lusk* in the "line of cases" employing a subjective knowledge lien creditor test. As explained above, this characterization is problematical. Although several cases have assumed the existence of this separate "line," the cases to which this is attributed do not explicitly state that they are employing such a test, and analysis of the holdings of these cases demonstrates that they do not in fact so hold.

The fact that there are no cases holding contrary to the holding in *Dragstrem*, i.e. the fact that there is no clear support for an opposing line of authority, weakens the attractiveness of adopting such an alternative position. Furthermore, we believe the approach set forth in *Dragstrem* better accords with the language and purposes underlying the Federal Tax Lien Act. Thus, we decline to recognize this alternative "line of cases" and embrace the reasoning of the Seventh Circuit in *Dragstrem*. Accordingly, we conclude that the IRS in its position as a hypothetical judgment lien creditor prevails over the erroneously released mortgage of Secor.

### B. *Relation back principle*

█ Even if we were not persuaded that the IRS would prevail due to its status as a hypothetical judgment lien creditor, we would nevertheless conclude that the IRS prevails on the basis of its argument that the Treasury Regulations forbid application of a relation back principle to award an unperfected lien priority over the tax lien. Section 301.6323(h)–1(a)(2) of the Treasury Regulations provides in pertinent part:

> (i) For purposes of this paragraph, a security interest is deemed to be protected against a subsequent judgment lien on—
>
> (A) The date on which all actions required under local law to establish the priority of a security interest against a judgment lien have been taken, or
>
> (B) If later, the date on which all required actions are deemed effective under local law, to establish the priority of the security interest against a judgment lien.
>
> For purposes of this subdivision, the dates described in (A) and (B) of this subdivision (i) shall be determined without regard to any rule or principle of local law which permits the relation back of any requisite action to a date earlier than the date on which the action is performed. . . .

Treas.Reg. § 301.6323(h)–1(a)(2) (1976). Under Alabama law, after the mistaken satisfaction, the mortgagee retained an equitable right to have its mortgage reinstated, as opposed to a security interest which was valid against all judgment creditors. The final action required under local law would be the reinstatement of the mortgage. Applying equitable principles, a court reinstating the mortgage would permit the perfection of the mortgage to relate back to the original date of recording, but only in the absence of the intervention of rights of innocent third parties. It is precisely the application of this type of relation back principle which the Regulations forbid. The date of perfection for a security interest under federal law is to be determined without reference to "any rule or principle of local law which permits the relation back of any requisite action." Because application of equitable reinstatement would permit the mortgagee's perfected interest to relate back to the earlier recordation, we conclude that the IRS prevails in priority over Secor's erroneously released mortgage.

## V. CONCLUSION

Based on the foregoing, we reverse the district court's subordination of the IRS's lien to that of Secor's. The judgment of the district court is

REVERSED.

ATKINS, Senior District Judge, concurring:

I concur in the judgment. I believe that adopting the "hypothetical judgment lien creditor test," as pronounced by the Seventh Circuit in *Dragstem v. Obermeyer*, 549 F.2d 20 (7th Cir.1977), is in keeping with both the purpose and the language of the Federal Tax Lien Act.

However, I feel compelled to comment that the facts of this case make it particularly difficult to apply that rule here. The Internal Revenue Service ("IRS") not only knew that the mortgage had been mistakenly recorded as satisfied, but it conducted itself as if the mortgage had not been satisfied. It was merely fortuitous that the IRS tax lien was routinely filed after the mortgage was erroneously recorded as satisfied, but before the mistake could be corrected.

Nevertheless, in the interest of articulating a clear rule in this circuit regarding the status of federal tax liens, I agree that the IRS tax lien here should take priority over Secor's mortgage. Therefore, I concur in the judgment reversing the district court.