In re Charles William FLETCHER, Sr., Debtor.

United States of America, Plaintiff,

v.

Charles William Fletcher, Sr.; Willie Mae Fletcher; Helmsing, Sims & Leach; and Joseph O. Verneuille, Jr., Trustee, Defendants.

Bankruptcy No. 98–11117–WSS.
Adversary No. 98–1178.

United States Bankruptcy Court,
S.D. Alabama,
Southern Division.

June 21, 1999.

J. Don Foster, United States Attorney, Carol Koehler Ide, Trial Attorney, Tax Division, U.S. Department of Justice, Washington, D.C., for plaintiff United States of America.

Lawrence B. Voit, Barry L. Thompson, Silver, Voit & Thompson, P.C., Mobile, Alabama, for defendants Fletcher.

Irvin Grodsky, Mobile, Alabama, for defendant Helmsing, Sims & Leach.

A. Richard Maples, Dauphin Law Center, P.C., Mobile, Alabama, for trustee.

## ORDER DETERMINING PRIORITY OF FEDERAL TAX LIENS

WILLIAM S. SHULMAN, Bankruptcy Judge.

This matter came before the Court on the complaint of the United States of America, Internal Revenue Service (hereinafter "the IRS") to determine the extent and priority of liens. William R. Sawyer appeared on behalf of the IRS, and Irvin Grodsky appeared on behalf of Helmsing, Sims & Leach. After considering the testimony, evidence and briefs of the parties, the Court makes the following findings of fact and conclusions of law:

### FINDINGS OF FACT

The Debtor, Charles William Fletcher, Sr. (hereinafter "Fletcher"), owned Fletcher Oil Company, Inc. (hereinafter "Fletcher Oil"), a wholesale distributor of petroleum products. Fred Helmsing (hereinafter "Helmsing") of the law firm of Helmsing, Sims & Leach represented both Fletcher Oil and Fletcher individually. The Internal Revenue Service (hereinafter "the IRS") began an examination of Fletcher's personal income tax returns for the years 1987, 1988 and 1989 in the early 1990s. Helmsing represented Fletcher in his negotiations with the IRS and eventually petitioned the U.S. Tax Court on Fletcher's behalf to recalculate the income tax deficiency for the years at issue. On June 16, 1995, the IRS assessed taxes of $101,713.46, $24,227.97 and $26,015.96 respectively for 1987, 1988 and 1989.[1] On February 15, 1998 and March 17, 1998, the IRS filed notices of federal tax liens for 1987, 1988 and 1989 taxes.

There was no dispute that Helmsing was aware of Fletcher's federal income tax liability at the time the taxes were assessed. Helmsing testified that he instructed Fletcher to pay the assessed taxes from monies Fletcher was to receive from an inheritance. Neither Fletcher nor Helmsing received a tax bill from the IRS after the assessment. Helmsing stated that he never considered the tax liability again until the IRS filed its notices of tax lien in 1998. He assumed that the taxes had been paid from the inheritance monies.

Throughout the 1990s, Fletcher and Fletcher Oil continued to have legal difficulties. Beginning in 1993, Fletcher Oil suffered a financial decline which led to corporate bankruptcy. The company also was found liable for excise taxes. Fletcher was indicted on 53 counts for federal excise tax evasion, and eventually pled guilty to one count in return for dismissal of the remaining charges. The Fletchers also

---

**1.** These amounts were taken from the notices of federal tax liens and include interest accrued through February 23, 1998. The amounts assessed in 1995 would have been less.

were responsible for a personal guarantee to an individual named Ratcliff for an amount in excess of $1 million. The debt was secured by all the property of Fletcher Oil and the Fletchers' home. Helmsing represented the Fletchers individually in all of the above listed matters.

Helmsing produced statements for legal services provided to Fletcher Oil through January 7, 1997 totaling $50,823.61. He also produced a billing instruction worksheet (hereinafter "the work sheet") showing additional fees that had accumulated but were unbilled as of April 1, 1997 (the date of Helmsing's mortgage) for approximately $12,500.00. The worksheet also showed that more than $16,461.00 in additional fees had been earned but not billed for the period of April 1, 1997 to February 25, 1998, the date that the IRS filed its tax lien. Helmsing also agreed to represent Fletcher in the 53-count criminal indictment for a fixed fee of $75,000.00.[2] There was no written fee agreement between Helmsing and Fletcher. Helmsing testified that he did not feel that a written contract was necessary given the longevity of his relationship with Fletcher and his family.

Helmsing and Fletcher testified that they considered the fees for services billed to the corporation to be owed by Fletcher individually because much of the time was spent dealing with matters related to the Fletchers' personal liability. Fletcher testified that he always considered himself personally liable for Helmsing's fee, and the evidence showed that a substantial portion of the legal work was for Fletcher individually. The Fletchers agreed to pay Helmsing $150,000.00 to satisfy the debt for fees for the criminal defense work and all civil matters handled for the Fletchers and Fletcher Oil. They agreed to sign a promissory note evidencing the debt and agreed to grant Helmsing a mortgage on their home to secure the debt. On April 1, 1997, the Fletchers executed the note and

mortgage in favor of Helmsing. The mortgage was recorded on April 7, 1997, and a corrected mortgage was recorded on June 25, 1997. As indicated above, the IRS filed notices of federal tax liens for 1987, 1988 and 1989 taxes on February 15, 1998 and March 17, 1998.

## CONCLUSIONS OF LAW

The issue before the Court is the priority of Helmsing's mortgage in relation to the IRS's tax lien on the Debtors' home. The following is a time line of the key events from the IRS's pre-trial brief:

| | |
|---|---|
| June 16, 1995 | 1987, 1988 and 1989 taxes assessed |
| April 1, 1997 | Mortgage to Helmsing executed |
| April 8, 1997 | Mortgage to Helmsing recorded |
| June 20, 1997 | Corrected mortgage to Helmsing executed |
| June 25, 1997 | Corrected mortgage to Helmsing recorded |
| Sept. 11, 1997 | Fletcher convicted for fraud |
| Feb. 25, 1998 | Federal tax lien recorded |
| March 17, 1998 | Corrected federal tax lien recorded |
| March 27, 1998 | Chapter 7 petition filed |

Under § 6321 of Title 26 of the United States Code, a tax lien is created following the demand by the IRS and the taxpayer's failure to pay. Section 6323(a) of Title 26, United States Code, provides: "The lien imposed by section 6321 shall not be valid as against any purchaser, holder of a security interest ... until notice thereof which meets the requirements of subsection (f) has been filed by the Secretary." As the IRS states in its pre-trial brief, it is undisputed that the IRS's notice of the tax lien was filed after Helmsing recorded his mortgage. It would appear from these facts that the Helmsing mortgage would have priority over the IRS's later filed lien.

However, the IRS attacks the applicability of § 6323(a) to Helmsing's mortgage on grounds that the mortgage does not meet the two requirements of 26 U.S.C. § 6323(h)(1), which defines a "security interest" as:

> any interest in property acquired by contract for the purpose of securing payment or performance of an obligation or

2. Helmsing testified that he did not keep a record of hours in cases involving a flat fee; therefore, there were no billing records kept for his work on Fletcher's criminal case.

indemnifying against loss or liability. A security interest exists at any time (A) if, at such time, the property is in existence and the interest has become protected under local law against a subsequent judgment lien arising out of an unsecured obligation, and (B) to the extent that, at such time, the holder has parted with money or money's worth.

According to the IRS, Alabama's recording statute, Alabama Code § 35–4–90(a) (1975), answers whether a security interest is protected under local law as provided in subsection (A) of § 6323(h)(1):

> All conveyances of real property, deeds, mortgages, deeds of trust or instruments in the nature of mortgages to secure any debts are inoperative and void as to purchasers for valuable consideration, mortgagees and judgment creditors without notice, unless the same have been recorded before the accrual of the right of such purchasers, mortgagees or judgment creditors.

The IRS argues that Helmsing's mortgage would not prevail over the IRS's lien because Alabama's recording statute only protects those who record over a prior unfiled interest if the recording party does not have knowledge of the prior unrecorded interest. The IRS further asserts that since Alabama's recording statute does not shield the Helmsing mortgage, it does not meet the first requirement under § 6323(h)(1)(A) to be a security interest and therefore cannot be protected as a security interest under 26 U.S.C. § 6323(a).

Helmsing asserts that even if he had actual knowledge of the IRS's lien, his previously recorded mortgage prevails over the IRS's subsequently filed tax lien based on the Eleventh Circuit's ruling in *In re Haas*, 31 F.3d 1081 (11th Cir.1994). Helmsing also maintains that the IRS's argument regarding the definition of a security interest under 26 U.S.C. § 6323(h)(1) is based on a misapplication of state law to an issue that is properly decided under federal law.

The Court agrees with Helmsing that the *Haas* opinion squarely addresses the issues raised by the present fact situation. In finding that an IRS tax lien had priority over a lender that had mistakenly released its mortgage, the *Haas* Court held:

> ... [S]ection 6323 mandates that notice of the taxing authority's lien "shall be filed" in the public records before it operates as notice effective against any holder of a security interest, as that term is defined by section 6323. 26 U.S.C. § 6323(f). *The filing requirement is critical: even a holder of a security interest who has actual knowledge of an unfiled tax lien will prevail over the government.* See *United States v. McDermott*, 507 U.S. 447, 449, 453, 113 S.Ct. 1526, 1528, 1530, 123 L.Ed.2d 128 (1993) ("under the language of § 6323(a) ('shall not be valid as against any ... judgment lien creditor until notice ... has been filed'), the filing of notice renders the federal tax lien extant for 'first in time' priority purposes ..."). (Emphasis added.)

The *Haas* opinion also addressed the IRS's argument regarding the definition of a "security interest" under § 6323(h)(1)(A). According to *Haas*, the requirement under § 6323(h)(1)(A) (the interest exists if it "has become protected under local law against a subsequent judgment lien arising out of an unsecured obligation") is determined by a "hypothetical judgment lien creditor" test rather than a "subjective knowledge lien creditor test". Under a "hypothetical judgment lien creditor" test, the focus is on "the protection state law gives the security interest against other hypothetical lien creditors. The pertinent inquiry is whether the security interest is protected under local law against any hypothetical judgment lien creditor that might arise, regardless of whether the [party] has knowledge of the competing nonfederal interest." *Haas*, 31 F.3d at 1087 (citation omitted). In dis-

cussing the relevance of actual knowledge of a competing interest in a priority dispute, the Eleventh Circuit stated: "As a practical matter, concepts such as 'notice,' 'knowledge,' and 'reliance' are meaningless when applied to the IRS. Actual knowledge by a secured creditor of the IRS's lien prior to filing does not enhance the IRS's position vis-a-vis that creditor; neither should the IRS's notice of a lien prior to filing operate to diminish its position." *Id.* at 1088.

█ Under Alabama's recording statute, § 35–4–90, a recorded mortgage has priority over a subsequently filed judgment lien. As Helmsing pointed out in his post-trial brief, *Baldwin County Federal Savings Bank v. Central Bank of the South,* 585 So.2d 1279 (Ala.1991), the case cited by the IRS, involved the issue of whether a recorded judgment creditor who had knowledge of an unrecorded purchase had priority over the purchaser, while the issue in the present case is whether a recorded mortgage has priority over a subsequently recorded tax lien. In light of *Haas,* the Court finds that Helmsing's mortgage fulfills the first requirement under 26 U.S.C. § 6323(h)(1) to be a "security interest." [3]

█ As stated above, § 6323(h)(1) has two requirements for finding that a security interest exists. Under the second requirement of § 6323(h)(1)(B), a security interest exists "to the extent that ... the holder has parted with money or money's worth." The IRS argued in its pre-trial brief that Helmsing's mortgage was not a "security interest" as defined by § 6323(h)(1) because Helmsing could not prove that it parted with money or money's worth. At the time that the IRS filed its pre-trial brief, Helmsing had not presented any billing records of its time spent for the Fletchers. At trial, the IRS maintained that the billing records only reflected time spent on behalf of Fletcher Oil, and did not enumerate hours spent on behalf of the Fletchers individually. However, Fletcher testified that he believed that he was personally liable to Helmsing for any debt incurred for legal services. The evidence also shows that much of the legal work that Helmsing performed for Fletcher Oil was related to Fletcher's personal liability. It is apparent from Fletcher's testimony that he did not make a distinction between Helmsing's time spent on matters for Fletcher Oil and time spent on the Fletchers individually.

The billing records submitted by Helmsing showed total fees of approximately $79,784.61 for legal work performed on behalf of the Fletchers and Fletcher Oil. In addition, Fletcher agreed to a fixed fee of $75,000.00 for Helmsing's representation related to the criminal indictment. Helmsing testified that he did not keep detailed time records for cases involving fixed fees, which the Court acknowledges is a common practice among attorneys for such cases. He further testified to the complex nature of the defense of the criminal indictment. Fletcher testified that he believed that he owed Helmsing approximately $75,000.00 for services related to the civil matters, and $75,000.00 for the criminal case. The Court finds that Helmsing gave "money's worth" under § 6323(h)(1), and thus proved a valid security interest under the statute.

---

3. Assuming that Helmsing's actual knowledge was relevant to his status as holder of a "security interest" under § 6323(h)(1), the Court finds that the IRS did not prove that Helmsing had actual knowledge of the unpaid tax lien. While it is true that Helmsing knew about the assessment of the taxes in 1995, there was no evidence that Helmsing knew that the assessed taxes remained unpaid in April 1997 at the time that he recorded the mortgage. According to Helmsing's testimony, he believed that the assessed taxes had been paid from inheritance funds received by Fletcher. The IRS presented no evidence to refute Helmsing's testimony, nor did it present evidence of any notice or tax bill to Fletcher or Helmsing prior the filing of the notices in February and March 1998. Based on the evidence presented, the Court finds that Helmsing did not have actual knowledge of the IRS's tax lien prior to recording his mortgage.

█ Having found that Helmsing is a "holder of a security interest" under § 6323(a), the Court further finds that the IRS's lien for taxes for 1987, 1988 and 1989 does not have priority over Helmsing's previously recorded mortgage. As the facts clearly indicate, Helmsing recorded his mortgage in April 1997, while the IRS did not file its notice of tax lien until February 1998. Under 26 U.S.C. § 6323(a) and its interpretation in *Haas*, the Court finds that the Helmsing mortgage has priority over the subsequently filed IRS tax lien. Based on the foregoing, it is hereby

**ORDERED** that the mortgage held by Helmsing has priority over the tax lien of the IRS for tax years 1987, 1988 and 1989.