211 So.2d 3 (1968)
PENINSULA STATE BANK, a Florida Banking Corporation, Petitioner,
v.
UNITED STATES of America, Eulo Strollo, Premate Strollo and Patsy Strollo, d/b/a Strollo's Restaurant: William H. Van Cleave, d/b/a International Business Interiors, Respondents.
No. 36702.
Supreme Court of Florida.
May 29, 1968.
*4 Wm. Terrell Hodges of Macfarlane, Ferguson, Allison & Kelly, Tampa, for petitioner.
Mitchell Rogovin, Asst. Atty. Gen., Lee A. Jackson, Crombie J.D. Garrett, Stuart A. Smith, Washington, D.C., and Edward F. Boardman, Tampa, U.S. Atty., for respondents.
ROBERTS, Justice.
This cause is before the court on certiorari granted to review a decision of the District Court of Appeal, Second District, in United States v. Strollo, Fla.App. 1967, 201 So.2d 466. Jurisdiction attached under Article V, Section 4(2), Fla. Const., F.S.A. because of a direct conflict with the decision of this court in Evins v. Gainesville National Bank, 80 Fla. 84, 85 So. 659 (1920), and similar cases.
The point of law with which we are here concerned was decided by the appellate court on an appeal by the United States from an adverse summary final decree entered by the trial court in an interpleader suit to determine the relative priority of a federal tax lien and the interest of the assignee of a contract taken for security on assignor's debt. The Peninsula State Bank, the petitioner here ("the Bank" hereafter), as assignee, and one Van Cleave, as assignor, filed on July 5, 1963 a general Notice of Assignment of Accounts Receivable covering present and future accounts receivable, as authorized by Chapter 524, Fla. Stat. 1963. The particular contract constituting the account receivable sub judice was acquired by Van Cleave on December 17, 1963, and assigned by Van Cleave to the Bank on December 23, 1963. Meantime, on November 29, 1963, the federal government had filed a Notice of Tax Lien against Van Cleave.
The Florida statute applicable to accounts-receivable transactions in 1963 was Chapter 524, supra (superseded in 1967 by the Uniform Commercial Code, Chapters 671-679, Fla. Stat. 1967). Section 524.04(1) of the Act defined a "protected assignee" as one who "* * * Files a notice of assignment after taking an assignment, or (b) Takes an assignment during the effective period of the notice." It was also provided therein, by Section 524.04(2) (a), that a protected assignee takes his assignment "subject to (a) Judicial liens on the account at the time his assignment became protected; * * *."
*5 Also applicable (retroactively) to the controversy sub judice are the amendments to Section 6323 of the Internal Revenue Code of 1954 made by Section 101(a) of The Federal Tax Lien Act of 1966. 26 U.S.C. Sec. 6323. The gist of the 1966 amendatory Act is set forth in the decision here reviewed, as follows: 
"The Federal Tax Lien Act of 1966 also amends § 6323 of the Internal Revenue Code to provide that certain specifically defined interests shall have priority over federal tax liens even though these interests arise after notice of the federal tax lien has been filed. The Act deals specifically with the type of commercial security financing agreement involved in this case and provides that in such cases the financing party may make loans against new accounts receivable for 45 days after the notice of the federal tax lien is filed. In order to receive the benefit of this protection, however, § 6323(c) (1) (B) provides that the security interest must be `* * protected under local law against a judgment lien arising, as of the time of tax lien filing, out of an unsecured obligation.' The new Act affords the Bank no relief because its claim would not have been protected by state law against a judgment lien arising on November 29, 1963, the time of tax lien filing. The Bank's claim was not protected by § 524.04, Fla.Stats., until it took the assignment of the Strollo contract on December 23, 1963, and § 524.04, Fla. Stat., F.S.A. provides that: `(2) A protected assignee takes subject to (a) Judicial liens on the account at the time his assignment became protected.'" 201 So.2d at page 470. (Emphasis supplied.)
The point of law with which we are here concerned arises out of the appellate court's statement, supra, that because the Bank was not, under Florida law, a "protected assignee" of the account receivable as of the date of the filing of the federal tax lien notice, the Bank's claim "would not have been protected by state law against a judgment lien" arising on that date. The clear implication of this statement is that an account receivable may be levied upon and sold, on execution issued, to satisfy the lien of a simple judgment creditor in this state. This holding is in direct conflict with the law, statutory and judicial, of this state.
We note, first, that Chapter 524, supra, did not, in terms, subordinate an unprotected assignment of an account receivable to a judgment lien; the liens to which they were subordinated by the statute were judicial liens. Sec. 524.04, supra. It must be presumed that the Legislature was aware of the fact that the statute designating the property subject to levy and sale under execution to satisfy a judgment lien, Section 55.20, Fla. Stat., F.S.A., did not and does not include in its enumeration mere contractual rights or choses in action, such as a mortgage or account receivable; and that this court has expressly held that they are not, therefore, subject to levy and sale under execution nor to the lien of an execution. In other words, insofar as what we call a "simple judgment creditor" is concerned, there simply is no such thing as a judgment lien against an account receivable in this state. The only way a simple judgment creditor can reach an account receivable owed to his debtor is by way of a separate and independent judicial proceeding to establish the debt and collect for himself the amount due thereon  either by way of garnishment proceedings or, in a proper case, by a suit brought in his own name by the assignee thereof. See Evins v. Gainesville National Bank, 80 Fla. 84, 85 So. 659 (1920); Guggenheimer & Co. v. Davidson, 74 Fla. 485, 77 So. 266 (1917); Harris v. Smith, 150 Fla. 125, 7 So.2d 343 (1942); 19 Fla.Jur., Judgments and Decrees, Sec. 191, pp. 257-258.
It is therefore crystal clear that the Legislature, in enacting Chapter 524, supra, used the words "judicial liens" advisedly  to mean a lien attaching specifically and directly to an account receivable by virtue *6 of such a garnishment proceeding, cf. Pleasant Valley Farms & Morey Condensery Co. v. Carl, 90 Fla. 420, 106 So. 427 (1925); Florida East Coast Ry. Co. v. Consolidated Engineering Co., 95 Fla. 99, 116 So. 19 (1928), or by virtue of a suit directly on such account receivable by the assignee thereof in his own name, cf. Harris v. Smith, supra, 7 So.2d 343  and that it did not intend to subject an account receivable to the lien of a simple judgment creditor, contrary to the provisions of Section 55.20 supra, and the decisons of this court referred to above.
Insofar, then, as the decision of the appellate court here reviewed may be interpreted as holding that the Bank's claim would have been subject, under Chapter 524, supra, to the lien of a simple judgment creditor and, for that reason, not entitled to the benefits of the 1966 Federal Tax Lien Act, it must be held to be erroneous.
In an attempt to support the trial court's decree, it is contended that the provision of the new 1966 Tax Act with which we are here concerned  granting the 45-day grace period only to those security interests which, under local law, would be protected against a judgment lien on the date the Notice of Tax Lien was filed  means that for the purpose of determining priority, "if a security interest would prime a state judgment lien arising as of the time of federal tax lien filing, it would also prime the federal tax lien." It argues, however, that the "state judgment lien" contemplated by the 1966 Act is a hypothetical lien which is "fully perfected" under state law as of the date of the tax lien filing  just as, it says, the federal tax lien is "fully perfect" by the filing of the Notice of Tax Lien. It concludes that: 
"Consequently, if (as the decisions cited by petitioner indicate) a judgment lien against an account receivable in Florida is not perfected until the issuance of a writ of garnishment, then Section 6323(c) (1) (B) assumes that this has been accomplished by the hypothetical judgment lien creditor as of the time of the tax lien filing."
This argument is premised on a factual situation which is not required by the 1966 Tax Lien Act  that is, that the security interest or the property covered thereby must be in existence at the time of the filing of the Notice of Tax Lien. On the contrary, the 1966 Tax Lien Act relates to, and grants a 45-day grace period to, a security interest "which came into existence after tax lien filing but which (A) is in qualified property covered by the terms of a written agreement entered into before tax lien filing and * * * (B) is protected under local law against a judgment lien arising, as of the time of tax lien filing, out of an unsecured obligation." Section 6323(c) (1), 26 U.S.C. The "qualified property" entitled to the benefits of the Act "includes only commercial financing security acquired by the taxpayer before the 46th day after the date of tax lien filing." Section 6323(c) (2) (B). Accounts receivable, inter alia, qualify as "commercial financing security". Section 6323(c) (2) (C).
Thus, in a case such as that sub judice  in which the account receivable did not come into existence until some eighteen days after the Notice of Tax Lien was filed  the government's argument can be paraphrased as follows: Section 6323(c) (1) (B) assumes that a hypothetical judgment lien creditor has issued a writ of garnishment against a hypothetical account receivable of the taxpayer which was not in existence at the time of the tax lien filing; and if a security interest in such hypothetical non-existent account receivable would "prime" the hypothetical lien obtained in such hypothetical garnishment proceeding, it would also prime the federal tax lien. The description of such reasoning which comes to mind is the classic reductio ad absurdum.
It goes without saying that it is impossible to perfect a judgment lien against *7  that is, to levy an execution upon  non-existent property of the judgment debtor, just as it is impossible to issue a writ of garnishment against an account receivable that has not yet come into existence. And we think it is clear, and we hold, that the "judgment lien" against which the security interest must be protected under local law in order to obtain the benefit of the 45-day grace period conferred by Section 6323(c) (1), supra, means only a simple unperfected judgment lien.
Since, as noted, the account receivable sub judice was not subject, under local law, to a simple judgment lien, it was entitled to the protection afforded by Section 6323(c) (1), supra; and the decision of the appellate court holding to the contrary should be and it is hereby quashed.
It is so ordered.
CALDWELL, C.J., and THOMAS, DREW and THORNAL, JJ., concur.