FIRST SECURITY BANK OF UNDER-
WOOD, a North Dakota banking
corporation, Plaintiff,

v.

FRIESE MANUFACTURING, INC.,
a corporation, Defendant,

Jerry Van Beek, Defendant
and Appellant,

United States of America, acting through
the Department of the Treasury, Defen-
dant and Appellee.

BROWN INSURANCE AGENCY, INC., a
corporation, North Dakota Workers'
Compensation Bureau, Diesel Special-
ists of Madison and Ken Bertrand,
d/b/a Diesel Specialists of Madison,
Inc., Bernie Haas, Wayne Friese and
Gloria Friese, Defendants,

and

Jerry Van Beek, Third–Party
Plaintiff and Appellant,

v.

Armon WOLFF, Peggy Wolff and Shane
Wolff, doing business as Wolff Auction-
eers, Third–Party Defendants.

Civ. No. 920034.

Supreme Court of North Dakota.

July 28, 1992.

Wheeler Wolf, Bismarck, for defendant,
third-party plaintiff, and appellant; argued
by Arnold V. Fleck.

S. Robert Lyons (argued), Appellate Sec-
tion of the Tax Div., U.S. Dept. of Justice,
Washington, D.C., for defendant and appel-

ERICKSTAD, Chief Justice.

Jerry Van Beek appeals from the order of the District Court for Mercer County denying his motion for summary judgment and granting the United States' motion for summary judgment. We affirm.

On January 26, 1987, Jerry Van Beek obtained a judgment, in Emmons County, against Friese Manufacturing, Inc. (FMI), in the amount of $19,881.80. Apparently, between April of 1987 and June of 1989, FMI made payments on the judgment reducing the amount owed on the judgment as of June 28, 1989, to $14,039.54. On August 18, 1989, a writ of execution was issued by the Clerk of the District Court for Emmons County, directing the Sheriff of McLean County to satisfy the judgment out of FMI's personal property. Arlin Thompson, the McLean County Sheriff, received the writ of execution on August 19, 1989, and prepared a notice of levy using a listing of property contained in an auction sale advertisement for FMI. At approximately 8:00 a.m., August 21, 1989, Sheriff Thompson went to FMI's place of business with the intent to levy on FMI's personal property and serve the notice of levy upon the president of FMI, Wayne Friese. The sheriff inquired of the two people present that morning of the whereabouts of Friese. Upon being told that Friese was not present but would return sometime after 12:00 noon that day, the sheriff left and checked later as to Friese's return by telephone. Sometime in the afternoon of August 21, 1989, the sheriff reached Friese and succeeded in serving him with the notice of levy. At approximately 11:00 a.m. on August 21, 1989, between the time the sheriff first went out to FMI's place of business and when he eventually returned to the premises and succeeded in reaching and serving Friese with the notice of levy, the United States filed a notice of federal tax lien with the North Dakota Secretary of State's office.

On August 26, 1989, FMI's personal property was sold at auction and the proceeds were deposited with the Clerk of District Court for Mercer County.

The First Security Bank of Underwood thereafter initiated this interpleader action against various defendants claiming an interest in the proceeds deposited with the court. First Security, as secured creditor, sought so much of the proceeds as necessary to satisfy FMI's debt. Van Beek, Bernie Haas, and the United States were the only named defendants that answered First Security's complaint. First Security subsequently moved for and was granted default judgment against the non-answering defendants, and summary judgment against the answering defendants. The clerk of court accordingly released approximately $27,000 to First Security to satisfy its perfected security interest. Answering defendant, Bernie Haas, also moved for and was granted summary judgment for the reason that some property belonging to Haas was sold in the FMI auction. The clerk of court accordingly released $700 to Haas.

On October 10, 1991, Van Beek moved for default judgment against all co-defendants and, alternatively, summary judgment against any answering defendant. The United States resisted Van Beek's motion and moved for summary judgment in its favor. In a memorandum decision, dated December 2, 1991, the district court concluded that the United States, through its tax lien, had a priority interest in the remaining proceeds. The district court accordingly directed the clerk of court to release the remaining funds deposited with the court to the United States. This appeal followed.

 Under federal law, a federal tax lien arises upon assessment and continues until the assessed liability is satisfied or becomes unenforceable by reason of lapse of time. See 26 U.S.C. §§ 6321, 6322. The validity and priority of federal tax liens is governed by § 6323 of Title 26, United States Code. Subsection (a) of 26 U.S.C. § 6323 provides that a federal tax lien "shall not be valid as against any purchaser, holder of a security interest, mechanic's lienor, or judgment lien creditor until notice

thereof ... has been filed." In essence, the priority of federal tax liens is determined by the general "first in time is first in right" rule. *United States v. Wingfield,* 822 F.2d 1466, 1473 (10th Cir.1987). "Therefore, a tax lien is junior to only those liens that not only attached to the asset, but also became sufficiently choate [as defined by federal law] before the tax lien" became effective. *Id.*[1]

1. Treasury regulation 301.6323(h)–1(g) interprets the term "judgment lien creditor" within the meaning of 26 U.S.C. § 6323 as follows:

"(g) *Judgment lien creditor.* The term 'judgment lien creditor' means a person who has obtained a valid judgment, in a court of record and of competent jurisdiction, for the recovery of specifically designated property or for a certain sum of money. In the case of a judgment for the recovery of a certain sum of money, a judgment lien creditor is a person who has perfected a lien under the judgment on the property involved. A judgment lien is not perfected until the identity of the lienor, the property subject to the lien, and the amount of the lien are established. Accordingly, a judgment lien does not include an attachment or garnishment lien until the lien has ripened into judgment, even though under local law the lien of the judgment relates back to an earlier date. If recording or docketing is necessary under local law before a judgment becomes effective against third parties acquiring liens on real property, a judgment lien under such local law is not perfected with respect to real property until the time of such recordation or docketing. If under local law levy or seizure is necessary before a judgment lien becomes effective against third parties acquiring liens on personal property, then a judgment lien under such local law is not perfected until levy or seizure of the personal property involved. The term 'judgment' does not include the determination of a quasi-judicial body or of an individual acting in a quasi-judicial capacity such as the action of State taxing authorities."

26 CFR Part 301.6323(h)–1(g).

2. Under the applicable federal and state law, the United States perfected its tax lien by filing notice of the lien with the Secretary of State's office.

26 U.S.C. § 6323 provides in part:

"(a) *Purchasers, holders of security interests, mechanic's lienors, and judgment lien creditors.*—The lien imposed by section 6321 shall not be valid as against any purchaser, holder of a security interest, mechanic's lienor, or judgment lien creditor until notice thereof which meets the requirements of subsection (f) has been filed by the Secretary.

\* \* \* \* \* \*

"(f) *Place for filing notice; form.*

In this case, the United States filed a notice of federal tax lien with the North Dakota Secretary of State's office at approximately 11:00 a.m. on August 21, 1989. Thus, the specific issue in this case is whether or not Van Beek's judgment lien became effective or choate before the notice of the federal tax lien was filed with the Secretary of State's office.[2]

(1) *Place for filing.*—The notice referred to in subsection (a) shall be filed—
(A) *Under State laws.*—
(i) *Real property.*— ...
(ii) *Personal property.*—In the case of personal property, whether tangible or intangible, in one office within the State (or the county, or other governmental subdivision), as designated by the laws of such State, in which the property subject to the lien is situated, except that State law merely conforming to or reenacting Federal law establishing a national filing system does not constitute a second office for filing as designated by the laws of such State; or
(B) *With clerk of district court.*—In the office of the clerk of the United States district court for the judicial district in which the property subject to the lien is situated, whenever the State has not by law designated one office which meets the requirements of subparagraph (A)."

Section 35–29–02, N.D.C.C., part of the Uniform Federal Lien Registration Act, provides in part:

"3. Notices of federal liens upon personal property, whether tangible or intangible, for obligations payable to the United States and certificates and notices affecting the liens must be filed as follows:

a. If the person against whose interest the lien applies is a corporation or a partnership whose principal executive office is in this state, as these entities are defined in the internal revenue laws of the United States, in the office of the secretary of state.

b. If the person against whose interest the lien applies is a trust that is not covered by subdivision a, in the office of the secretary of state.

c. If the person against whose interest the lien applies is the estate of a decedent, in the office of the secretary of state.

d. In all other cases, in the office of the register of deeds of the county where the person against whose interest the lien applies resides at the time of filing of the notice of lien."

■ Under North Dakota law, a judgment lien on personal property only arises upon the "actual levy" of the property in question. *Towne v. Sautter*, 326 N.W.2d 694, 697 (N.D.1982); section 28–21–13, N.D.C.C. The parties disagree as to what is necessary for an actual levy.

Section 28–21–08, N.D.C.C.,[3] provides in

3. In 1977, the Legislative Assembly changed the statutory framework for attachment by repealing chapter 32–08, N.D.C.C., and enacting chapter 32–08.1, N.D.C.C., in its place. S.L.1977, ch. 301. Prior to its repeal, section 32–08–10, N.D.C.C., read as follows:

"*Attachment—How levied.*—A levy under a warrant of attachment must be made as follows:

1. Upon real property, by the sheriff's filing with the register of deeds of the county in which the property is situated a notice of the attachment subscribed by him, stating the names of the parties to the action, the amount of the plaintiff's claim as stated in the warrant, and a description of the property levied upon, such notice to be recorded and indexed by the register of deeds in like manner and in the same book as a notice of the pendency of an action.

2. Upon personal property which by reason of its bulk or other cause cannot be removed immediately, and upon cattle or horses, commonly known as range stock, and running at large between the first day of November and the next succeeding fifteenth day of May, by the sheriff's filing with the register of deeds of the county in which such property is situated or such livestock is running at large, a notice of the kind described in subsection 1. In the case of range stock, such notice shall specify the number, as nearly as may be, and shall contain a description of such stock by marks and brands, and such levy shall be as valid and effectual as if such property had been seized and the possession and control thereof retained by the officer. The register of deeds shall receive and file all such notices, numbering the same consecutively, and must keep the same in his office in regular and orderly file, and shall make an entry thereof in a book to be kept for that purpose, and designated as the index of attachments, in the order in which they are received. Such entry shall contain in separate columns the names of the defendants alphabetically arranged, the names of the plaintiffs, the number endorsed upon the notice, the amount claimed by the plaintiff, and the time of the filing. Notwithstanding the provisions of this subsection, an attachment, by direction of the plaintiff or his attorney, may be levied upon the property mentioned in this subsection in accordance with subsection 3, but if additional costs are made by such a levy the same shall not be allowed to the plaintiff, if in the judgment of the court the taking of the property into the custody of the sheriff was unnecessary.

3. Upon personal property capable of manual delivery, including bonds, promissory notes, or other instruments for the payment of money, by taking the same into the sheriff's actual custody. He thereupon without delay must deliver a copy of the warrant to the person from whose custody such property is taken.

4. Upon other personal property, by leaving a copy of the warrant and a notice showing the property attached with the person holding the same, or, if it consists of a demand other than as specified in the last subsection, with the person against whom it exists, or if it consists of a right or share in the stock of a corporation or interest or profits thereon, with the president or other head of the corporation, or the secretary, cashier, or managing agent thereof."

Repealed section 32–08–12, N.D.C.C., reads: "*Warrant and notice of levy to be served.*—In the cases mentioned in subsections 1 and 2 of section 32–08–10, the sheriff, within thirty days after the levy of· an attachment, ·shall serve the warrant of attachment, together with a notice of levy describing the particular property levied on, in the manner provided for the service of a summons as follows:

1. If the levy is made upon real property, upon the occupant thereof, if any.

2. If upon personal property mentioned in said subsection 2, upon the person in whose custody the same may be.

The failure of the sheriff to serve such warrant or notice shall not invalidate the levy, but he shall be liable to the person whose property is attached for any damages which may be sustained by reason of such failure."

Current section 32–08.1–10, N.D.C.C., reads: "*What may be attached—How attached.* All the property of the defendant, not exempt from execution, may be attached. Personal property shall be attached as upon an execution and the provisions respecting the levy of an execution thereon shall be applicable to an attachment."

Section 28–21–08, N.D.C.C., prior to changes in 1985, read as follows: "*Property subject to execution—Manner of levy.* All goods, chattels, moneys, and other property, both real and personal, or any interest therein, of the judgment debtor not exempt by law, and all property and rights of property seized and held under attachment in the action are subject to execution. Shares and interests in any corporation or company, and debts and credits, and all other property, both real and personal, and any interest in real or personal property, and all other property not capable of manual delivery, may be taken on execution and sold as provided in this chapter. *The levy of an execution shall be*

relevant part:

> "*Property subject to levy—Manner of levy.* All goods, chattels, moneys, and other property, both real and personal, or any interest therein, of the judgment debtor not exempt by law, and all property and rights of property seized and held under attachment in the action are subject to execution.:.. The levy under an execution must be made as follows:
>
> * * * * * *
>
> 2. On personal property capable of manual delivery, the sheriff shall take the property into custody. When taking the property, the sheriff shall deliver a copy of the execution and notice of levy to the person from whom the property was taken.
>
> * * * * * *
>
> 4. On other personal property, the sheriff shall leave a copy of the execution and a notice of levy under an execution with the person holding the property....

The sheriff may elect not to seize property during the time period the debtor has to claim exemptions under chapter 28–22 or in the case of property which by reason of its bulk or other cause cannot be removed immediately and upon service of the notice of levy in accordance with this section and section 28–21–12, the levy is as valid and effectual as if the property had been seized and the possession and control thereof retained by the officer. The lien of the writ of execution is effectual from the time the actual levy is made in accordance with this section and section 28–21–12."

Van Beek asserts that under the above section, a levy on personal property which by reason of its bulk or other causes cannot be easily seized is effective from the time the sheriff locates the property and elects not to seize it. The United States argues that in cases where the sheriff elects not to physically seize the property in question the levy is effective only upon service of the notice of levy.

We need not decide whether or not service of the notice of levy is necessary before a judgment lien becomes effective or choate in cases where personal property is not physically seized. If service were not required we would nevertheless conclude that some affirmative act or outward manifestation of the sheriff's intent to levy and of his election not to seize must be shown. An uncommunicated secret intent to levy is insufficient. *See generally* 30 Am.Jur.2d *Executions* § 236 (1967).

■ In general, in order to constitute a levy there must be an assertion of dominion, or some overt act amounting to an assertion of dominion over the property in question. *Id.* Although a physical seizure is not, under certain circumstances, required under section 28–21–08, N.D.C.C., there nevertheless must be some overt act which manifests an intent to assume dominion over the property.

■ In this case, the sheriff did not tag the items of personal property or post some notice on FMI premises that FMI's personal property was under the sheriff's control. The sheriff did not post a deputy on FMI's premises to assume control over the property nor did he indicate to anyone present at FMI that FMI's personal property was constructively or otherwise taken under his control. Rather, the sheriff, except for what we have previously alluded to, merely entered FMI premises intending to levy on FMI's personal property by serving Wayne Friese with a previously prepared notice of levy.[4] Not finding Friese present, the

---

*made in the same manner as a levy under a warrant of attachment.* [Emphasis added.]" Thus, prior to the 1985 changes, section 28–21–08, N.D.C.C., appeared to reference the detailed provisions for the manner of making levies under a warrant of attachment under section 32–08–10 which had been repealed by the 1977 Legislature.

4. We note the following from McLean County Sheriff Arlin Thompson's deposition:

> "Q. Okay. When you went out there that morning and he wasn't there, who did you talk to?
>
> "A. There were two people I didn't know that were in the shop. Evidently they were sorting out the merchandise that—or the property up there, getting it ready for the sale, but I didn't know who they were. They just

sheriff simply left, intending to serve Friese later that afternoon. We conclude that, as a matter of law, the acts of the sheriff in this case prior to serving the notice of levy were insufficient to effectuate a levy. His later service of the notice of levy cannot relate back to the time he first appeared at FMI's premises, inquired of Friese's whereabouts and left without further exercising control of the property. The tax lien of the United States thus has priority over Van Beek's judgment lien.

The order of the district court granting the United States' motion for summary judgment is accordingly affirmed.

VANDE WALLE, LEVINE, MESCHKE and JOHNSON, JJ., concur.

said he'd gone to Minot and would be back in the afternoon.

"Q. Did you take any action to take control of that property at that time?

"A. No, I did not.

"Q. Okay. Did you—did you inventory the property?

"A. Well, I didn't inventory. . . .

\* \* \* \* \* \*

"Q. Did you inform any of the people that were there that morning that you were seizing the property?

"A. No, I did not.

"Q. You didn't tell them not to move it?

"A. I didn't tell them anything. I just asked where Mr. Friese was.

"Q. Did you that morning consider yourself to have seized that property?

"A. Well, I guess not. Until I can serve the papers—I suppose *it's not in my control until I serve the defendants the levy sheets and stuff.*

\* \* \* \* \* \*

"Q. Well, let me ask you: Are you indicating in that sentence that the property was under your control that morning subject to being—you serving the papers that afternoon?

"A. No, no. I just felt that they're not going to move—you know. . . .

"Q. So if Mr. Friese had—if you were aware that Mr. Friese had directed one or more of these people to move property and pull it out from the sale, could you have or would you have attempted to stop that, not having served Mr. Friese yet?

\* \* \* \* \* \*

"A. If I'd have known that some of the property was going to be disposed of, I could have made a copy of the levy and left it there. I would have to determine who the people were and left a copy of the levy if I would have been concerned that the property was going to be taken from the premises, but I wasn't concerned about it and didn't have any knowledge that anybody was going to take any, but there could have been a levy made and left with somebody else, I guess, not that—I don't know if it would be legal. The statute says you have to leave a copy of the judgment with the defendant, so it can get to be a little iffy, I suppose, until you actually make service. In this particular case I wasn't concerned that any of the property would disappear."

It appears that Sheriff Thompson intended to assume some dominion over FMI's personal property *only* through service of the notice of levy.