United States Court of Appeals,

Eleventh Circuit.

No. 95-2725.

LITTON INDUSTRIAL AUTOMATION SYSTEMS, INC., Plaintiff,

v.

NATIONWIDE POWER CORPORATION; Fitzgerald, Peters, Dakmak & Miller, P.C., Defendants-Cross-Defendants,

United States of America, Defendant-Cross-Defendant-Appellee,

Magna Card, Inc., d.b.a. Highlander International Corp.; John F. Roscoe, III, Defendants-Cross-Defendants-Appellants,

Brooks Satellite, f.k.a. Nationwide Power Corporation, Defendant-Cross-Defendant.

Feb. 24, 1997.

Appeal from the United States District Court for the Middle District of Florida. (No. 91-377-CIV-21C), Ralph W. Nimmons, Jr., Judge.

Before BIRCH, Circuit Judge, KRAVITCH[*], Senior Circuit Judge, and SCHWARZER[**], Senior District Judge.

BIRCH, Circuit Judge:

The issue in this appeal is whether an unperfected security interest in interpleaded funds is entitled to priority over a competing federal tax lien. The district court held that the federal tax lien is entitled to priority. We affirm.

I. BACKGROUND

The facts in this appeal are essentially undisputed. Plaintiff Litton Industrial Automation Systems, Inc. ("Litton")

[*]Judge Kravitch was in regular active service when this matter was originally submitted but has taken senior status effective January 1, 1997.

[**]Honorable William W. Schwarzer, Senior U.S. District Judge for the Northern District of California, sitting by designation.

filed this interpleader action in the United States District Court for the Eastern District of Michigan, from which it was transferred to the United States District Court for the Middle District of Florida. Litton deposited in the registry of the court $572,627.46, which it owed to Nationwide Power Corporation ("Nationwide") pursuant to a judgment obtained by Nationwide on August 15, 1989. The real parties in interest are Highlander International Corporation ("Highlander") and the United States.[1]

Highlander's interest in the interpleaded funds stems from an agreement between Nationwide and Highlander, pursuant to which Nationwide sought to secure a debt it owed to Highlander.[2] In this agreement, Nationwide granted to Highlander a security interest in certain "cash collateral," including Nationwide's cause of action against Litton, which eventually resulted in the money judgment here in dispute. This interest arose on the date of the agreement, April 15, 1986. Highlander did not file a UCC-1 statement until August 1989, however. The Government's interest in the interpleaded funds arose from a tax assessment on June 9, 1986 of

---

[1]The district court dismissed Litton from the case as a disinterested stakeholder. The court also dismissed with prejudice all the defendants, except Highlander and the IRS. On February 23, 1995, John F. Roscoe, attorney for Nationwide, Magna Card, Inc., and Highlander moved to be substituted as a party for Magna Card and Highlander. The district court denied Roscoe's motion, and Roscoe appeals. We summarily affirm the district court's denial of this motion.

[2]A series of commercial transactions preceded this agreement. These transactions are described in the district court's opinion. *See Litton Indus. Automation Sys. v. Nationwide Power Corp.,* 75 A.F.T.R.2d (RIA) 2276 No. 91-377-CIV-T-21C (M.D.Fla. Mar.30, 1995). A detailed description of these transactions is not necessary here because it has no bearing on the resolution of the narrow issue on appeal.

tax penalties exceeding $700,000 against Nationwide.  On July 3, 1986, the Internal Revenue Service ("IRS") filed a notice of federal tax lien in Broward County, Florida, in which Nationwide had its principal executive office.

On July 27, 1989, the IRS served a notice of levy on Litton's attorney, directing him to deliver to the IRS any monies owed to Nationwide.  After judgment was entered in favor of Nationwide in its suit against Litton, Litton initiated the instant interpleader action to determine which party is entitled to the funds.  The district court granted summary judgment to the Government, holding that the federal tax lien was entitled to priority over Highlander's security interest.  This appeal followed.

## II. DISCUSSION

We have jurisdiction to review the district court's order under 28 U.S.C. § 1291.  Because at least two of the defendants named in this interpleader action are of diverse citizenship, the district court's jurisdiction was founded on 28 U.S.C. § 1335.  The Government has waived its sovereign immunity for interpleader actions involving tax liens in 28 U.S.C. § 2410.

We review the district court's grant of summary judgment *de novo* and apply the same legal standards as the district court. *Sultenfuss v. Snow,* 35 F.3d 1494, 1499 (11th Cir.1994) (en banc), *cert. denied,* --- U.S. ----, 115 S.Ct. 1254, 131 L.Ed.2d 134 (1995).  This case involves a pure question of law:  Is Highlander the "holder of a security interest" which is entitled to priority over the Government's federal tax lien under the Federal Tax Lien Act of 1966 ("FTLA"), 26 U.S.C. § 6323?

A. *Applicable Law*

Before we address the contentions of the parties, we briefly outline the applicable law. Under the Internal Revenue Code, a tax lien arises at the time of assessment, 26 U.S.C. § 6322, on "all property and rights of property, whether real or personal, belonging to" a delinquent taxpayer, *id.* § 6321. The FTLA provides, however, that the tax lien "shall not be valid as against any ... holder of a security interest ... until notice thereof which meets the requirements of subsection (f) has been filed." *Id.* § 6323(a). Therefore, any "security interest" which arises prior to the proper filing of a federal tax lien takes priority over the tax lien. *See United States v. McDermott,* 507 U.S. 447, 449, 113 S.Ct. 1526, 1528, 123 L.Ed.2d 128 (1993). The FTLA defines a "security interest" as

> any interest in property acquired by contract for the purpose of securing payment or performance of an obligation or indemnifying against loss or liability. A security interest exists at any time (A) if, at such time, the property is in existence and the interest has become protected under local law against a subsequent judgment lien arising out of an unsecured obligation, and (B) to the extent that, at such time, the holder has parted with money or money's worth.

26 U.S.C. § 6323(h)(1). The dispute in this case is whether Highlander's interest qualifies as a security interest as defined by the FTLA.

B. *District Court Opinion and Contentions of the Parties*

It is undisputed in this appeal that a tax lien arose upon all Nationwide's property on June 9, 1986, the first date of the tax penalty assessments against Nationwide. It is also undisputed that the IRS properly filed a notice of this tax lien in Nationwide's county of residence, as required by 26 U.S.C. §

6323(f)(2)(B), on July 3, 1986.  Therefore, for Highlander's interest to take priority over the tax lien, Highlander must have been the holder of a "security interest," as that term is defined in the FTLA, on July 3, 1986.  To do so, Highlander must establish that its interest satisfies four conditions:

> (1) that the security interest was acquired by contract for the purpose of securing payment or performance of an obligation or indemnifying against loss;  (2) that the property to which the security interest was to attach was in existence at the time the tax lien was filed;  (3) that the security interest was, at the time of the tax lien filing, protected under state law against a judgment lien arising out of an unsecured obligation;  and (4) that the holder of the security interest parted with money or money's worth.

*Haas v. Internal Revenue Serv. (In re Haas),* 31 F.3d 1081, 1085 (11th Cir.1994), *cert. denied,* --- U.S. ----, 115 S.Ct. 2578, 132 L.Ed.2d 828 (1995).  As in *Haas,* the only issue on appeal in this case is whether the third condition is satisfied.  In other words, this case turns on whether Highlander's interest was protected under Florida law—the applicable local law—against a judgment lien arising out of an unsecured obligation on July 3, 1986.

Relying on the "hypothetical judgment lien creditor test" adopted by this court in *Haas,* the district court held that Highlander's interest was not protected under Florida law against a judgment lien.

> [T]he hypothetical judgment lien creditor test operates to put the IRS in the shoes of *any* subsequent judgment creditor, including the most favorable shoes.  Thus, if any subsequent judgment creditor could prevail over [Highlander], then the IRS prevails.

*Haas,* 31 F.3d at 1089 (footnote omitted).  The district court reasoned that a class of judgment creditors, those who qualify as "lien creditors" as defined in U.C.C. § 9-301(3) and who have no

notice of Highlander's previous unperfected interest, could have prevailed over Highlander's interest under Florida law. The court concluded that the Government prevails here.

Highlander contends, however, that under Florida law a "judgment lien" does not attach to *intangible* assets, such as the funds at issue in this case, until the judgment creditor has taken further judicial action—by way of garnishment or an independent suit to enforce the debt. *See Peninsula State Bank v. United States,* 211 So.2d 3, 5 (Fla.1968). Highlander concludes that the holder of a simple "judgment lien" on intangibles does not qualify as a UCC "lien creditor" under Florida law. Thus, Highlander's security interest, though unperfected, prevails over the judgment lien because Highlander's interest was the first to attach. *See* Fla. Stat. ch. 679.312(5)(b) (1995).

Highlander argues that *Haas* is distinguishable. The priority contest in *Haas* was between a mortgagee who had mistakenly released its mortgage on the contested real property and a federal tax lien. The applicable local law was Alabama law, which provided that the mortgagee's interest is subordinate to that of a "judgment creditor without notice." *Haas,* 31 F.3d at 1086. The issue decided in that case was whether knowledge on the part of the IRS of the mistakenly released mortgage affected the hypothetical priority contest—we decided that it did not—, not whether the IRS should be treated as a UCC lien creditor. In other words, the IRS would have won the priority contest in *Haas,* whether it was a UCC lien creditor or not, because it was the hypothetical holder of a "judgment lien" and thus a judgment creditor entitled to priority under Alabama

law. Highlander acknowledges that, in *Haas,* we noted: "In interpreting the phrase "protected under local law against a subsequent judgment lien,' courts and commentators have determined the phrase is equivalent to being protected against a "lien creditor' as defined in U.C.C. § 9-301(3)." *Haas,* 31 F.3d at 1087. Highlander contends, however, that this statement is *dictum,* in light of the discussion of the specific type of interest and applicable local law at issue in *Haas.*

Highlander also distinguishes *Dragstrem v. Obermeyer,* 549 F.2d 20 (7th Cir.1977), which is the first decision of a United States Court of Appeals to adopt the hypothetical judgment creditor test and upon which we relied heavily in *Haas. Dragstrem* involved facts analogous to those we face here. The priority contest in *Dragstrem* was between an unperfected security interest and a subsequent tax lien over an interpleaded fund. *Id.* at 22. The difference between *Dragstrem* and this case lies, however, in the applicable local law. The relevant local law in *Dragstrem* was U.C.C. § 9-301(1)(b), which, as adopted in Indiana at the time, provided that "an unperfected security interest is subordinate to the rights of ... (b) a person who becomes a lien creditor *without knowledge* of the security interest and before it is perfected." *Id.* at 23 (omission in original) (emphasis added). The equivalent provision of Florida law is a newer version of section 9-301(1)(b) that omits the knowledge requirement. *See* Fla. Stat. ch. 679.301(1)(b). Therefore, the central issue decided in *Haas* and *Dragstrem,* whether knowledge on the part of the IRS affects the priority of the tax lien, is not relevant in this case.

More importantly, a judgment lien attaches to intangible property in Indiana upon docketing of a judgment and the delivery of a writ of execution to the sheriff, *Dragstrem,* 549 F.2d at 27, without any additional judicial proceeding as required in Florida. Highlander argues that the holder of a "simple judgment lien" is therefore a UCC lien creditor under Indiana law but not under Florida law. *Compare id.* ("Upon delivery [of the writ to the sheriff], the lien would attach to the debtor's property and the creditor would become a "lien creditor' under the UCC.") *with Peninsula State Bank,* 211 So.2d at 5 ("The only way a simple judgment creditor can reach [intangible property] owed to his debtor is by way of a separate and independent judicial proceeding...."). According to Highlander, that such holder of a simple judgment lien prevailed under Indiana law does not mean that it should prevail under Florida law.

The Government contends, however, that the additional procedural steps that a Florida judgment creditor must take for its judgment lien to attach to intangible property are no different from the lack of knowledge requirement that was at issue in *Haas.* In order to be in "the most favorable shoes," *Haas,* 31 F.3d at 1089, the hypothetical judgment creditor must be assumed to have completed whatever additional steps are required under local law for the judgment lien to attach. Highlander responds that there is an important distinction between the knowledge requirement in *Haas* and the additional steps necessary under Florida law for a judgment lien to attach to intangible property. The underpinning of the hypothetical judgment creditor test is that the FTLA

> "does not put the government in the position of a competing holder of a security interest or judgment lien, but rather describes the *legal status* which security interests must obtain under state law in order to have priority over later filed or unfiled federal tax liens."

*Haas,* 31 F.3d at 1087 (quoting *Dragstrem,* 549 F.2d at 26). Therefore, whether the IRS had knowledge of the security interest is irrelevant to the inquiry of whether that security interest achieved a given legal status. Under *Haas,* we do not engage in "a case-bycase inquiry into whether the IRS had "notice.' " *Haas,* 31 F.3d at 1088. Instead, we compare the security interest at issue to a given legal construct, namely a hypothetical "judgment lien." Just what the phrase "judgment lien" means was not an issue in *Haas,* although it was addressed in dicta. *See id.* at 1087 (noting that "courts and commentators have determined the phrase is equivalent to ... a "lien creditor' as defined in the U.C.C. § 9-301(3)"). Highlander argues that the plain meaning of the phrase "judgment lien" is a "simple" judgment lien that arises, but not necessarily attaches to intangible property, upon the entry of a judgment. Highlander argues further that whether such "judgment lien" should be considered to have attached to the property in dispute is a matter of state law. If state law requires separate judicial action for the lien to attach to the property, then a "judgment lien" in that state, even a hypothetical judgment lien, has not attached and its holder is not a UCC lien creditor. *Cf. Peninsula State Bank,* 211 So.2d at 5. Highlander adds that defining a "judgment lien" in this fashion does not defeat the congressional purpose, implemented in the hypothetical judgment creditor test, of avoiding a case-by-case inquiry into whether the IRS actually

complied with certain state law requirements—i.e., had no notice (as in *Haas* ) or performed the actions necessary under state law for the judgment lien to attach to the property in question.

C. *Analysis*

We agree with Highlander that *Haas* does not necessarily dictate the result in this case. To determine whether the language of *Haas* should be extended to encompass the additional steps needed under Florida law for a "simple judgment lien" to attach, we must construe the statute and ascertain what the phrase "judgment lien," as used by Congress in section 6323(h)(1), means.

In a case involving statutory construction, our starting point always is the language of the statute, and we assume that Congress expressed its intent by the ordinary meaning of the words it used. *American Tobacco Co. v. Patterson,* 456 U.S. 63, 68, 102 S.Ct. 1534, 1537, 71 L.Ed.2d 748 (1982); *Gulf Life Ins. Co. v. Arnold,* 809 F.2d 1520, 1522 (11th Cir.1987). The FTLA does not define the phrase "judgment lien." Highlander relies primarily on the Florida Supreme Court's decision in *Peninsula State Bank* to argue that the plain meaning of the phrase "judgment lien" is a "simple unperfected judgment lien." *Peninsula State Bank,* 211 So.2d at 7. The gist of this argument is that, under Florida law, a simple money judgment against a defendant creates a "lien" on all of its property. Such a lien, "a simple judgment lien" in the terminology used by the Florida Supreme Court, does not attach to the defendant's intangible personal property until further judicial action is taken. *Id.* at 5. Highlander's argument is unconvincing.

Federal law, not state law, governs a priority contest

between a security interest and a federal tax lien. *Haas,* 31 F.3d at 1084-85 (citing *Aquilino v. United States,* 363 U.S. 509, 513-15, 80 S.Ct. 1277, 1280-81, 4 L.Ed.2d 1365 (1960)). Thus, although the FTLA resolves such a contest by comparing the security interest to a judgment lien under state priority rules, what constitutes a "judgment lien" within the meaning of section 6323(h)(1) is a matter of federal law. We are concerned with what Congress intended that phrase to mean, not with what state law labels as a judgment lien. *Cf. id.* at 1088 n. 10 (definition of "judgment creditor" in a predecessor to the FTLA is a matter of federal law).

The phrase "judgment lien" does not have a generally understood meaning. *See Texas Oil & Gas Corp. v. United States,* 466 F.2d 1040, 1047 (5th Cir.1972) ("The phrase "protected against a judgment lien' is not a term of art ...."), *cert. denied,* 410 U.S. 929, 93 S.Ct. 1367, 35 L.Ed.2d 591 (1973); Peter F. Coogan, *The Effect of the Federal Tax Lien Act of 1966 Upon Security Interests Created Under the Uniform Commercial Code,* 81 Harv. L.Rev. 1369, 1389 (1968) ("The term "judgment lien' is not generally used in chattel security statutes...."). For example, in contrast to Florida, there appears to be no such thing as a "judgment lien," whether labeled "simple" or not, on personal property in some states. *See, e.g., Keep Fresh Filters, Inc. v. Reguli,* 888 S.W.2d 437, 443 (Tenn.Ct.App.1994) (Under Tennessee law, "judgment creditors ... may obtain two significantly different liens against the judgment debtor's property. The first is [a] judgment lien ... that attaches to ... real property. The second is [an] execution lien ... that attaches to ... personal

property.").; *Franchise Tax Bd. v. Danning (In re Perry),* 487 F.2d 84, 89 (9th Cir.1973) (Zirpoli, J., dissenting) (explaining that "no provision of California law ever permits that a judgment lien attach to personal property" and that only an "execution lien" can reach such property), *cert. denied,* 415 U.S. 978, 94 S.Ct. 1565, 39 L.Ed.2d 874 (1974).  In other states, a simple judgment creates no lien at all on personal property, and a judgment lien does not arise until certain additional action is taken by the judgment creditor.  *See, e.g., Fore v. United States,* 339 F.2d 70, 72 (5th Cir.1964) (Under Texas law, "[t]he filing and indexing of [a] judgment in ... Harrison County entitled [the judgment creditor] to a lien upon all of the real estate of the defendant ... situated in the county.  It gave him no lien on the personal property of the defendant."); *First Security Bank v. Friese Mfg., Inc.,* 489 N.W.2d 342, 345 (N.D.1992) ("Under North Dakota law, a judgment lien on personal property only arises upon the "actual levy' of the property in question.").[3]

---

[3]The inconsistency between what these courts from other states refer to as a judgment lien or execution lien and what the Florida Supreme Court refers to as a "simple judgment lien" in *Peninsula State Bank* appears to stem from a different understanding of the word "lien."  For the *Reguli, Fore,* and *First Security Bank* courts, and the dissenting judge in *Perry,* a lien is an interest that has actually attached to the defendant's property.  The Florida court uses the word "lien" to mean a claim arising from a judgment but that has not necessarily attached to the subject property.  This inconsistency may be a good example of what Massachusetts Justice H.T. Lummus said:  "The word "lien' hardly admits of definition.  It is used to describe various kinds of interests in property or rights over it, and is frequently used in a very loose way."  H.T. Lummus, *The Law of Liens with Especial Reference to Massachusetts & Maine* I (1904), *quoted in* Coogan, *supra,* at 1371 n. 11. Unfortunately, Congress did not define the word "lien" or the phrase "judgment lien" in the FTLA.

Even the Florida Supreme Court's opinion upon which Highlander relies is confusing in defining a judgment lien. Although the court eventually concluded in that opinion that the term "judgment lien" used in 26 U.S.C. § 6323(c)(1)(B) means a "simple judgment lien" under Florida law, it also stated: "[I]nsofar as what we call a "simple judgment creditor' is concerned, there simply is *no such thing* as a judgment lien against [intangible property] in this state." *Peninsula State Bank,* 211 So.2d at 5 (emphasis added). What the court was referring to in its opinion as a "simple judgment lien" is therefore nothing more than a simple money judgment. This interpretation of the phrase judgment lien, which Highlander invites us to adopt, in fact reads the word "lien" out of the statute. As the Eighth Circuit did in a similar case, we decline this invitation. *See International Fidelity Ins. Co. v. United States,* 949 F.2d 1042, 1045 (8th Cir.1991).

We conclude that the phrase "judgment lien" has no ordinary meaning so as to compel Highlander's interpretation of the phrase within the context of the FTLA. The Government argues that "judgment lien," as used in the FTLA, is equivalent to the interest of a UCC lien creditor. This interpretation is one that has been adopted almost unanimously by the commentators, *see, e.g,* Timothy R. Zinnecker, *When Worlds Collide: Resolving Priority Disputes Between the IRS and the Article Nine Secured Creditor,* 63 Tenn. L.Rev. 585, 605-06 & nn.89-90 (1996) (collecting cases); Coogan, *supra,* at 1382-83, and by the courts—though arguably in dicta, *see, e.g., Haas,* 31 F.3d at 1087; *Dragstrem,* 549 F.2d at 25. The rationale for adopting this interpretation is that one of

Congress's main goals in enacting the FTLA was "to conform the lien provisions of the internal revenue laws to the concepts developed in [the] Uniform Commercial Code." H.R.Rep. No. 89-1884, at 1-2 (1966), *reprinted in* Committee on Ways and Means, 89th Cong., *Legislative History of H.R. 11256: Federal Tax Lien Act of 1966,* at 443-44 (1966) [hereinafter *Legislative History* ]. The only way in which the U.C.C. gives effect to the interest of a judgment creditor is the "lien creditor" concept embodied in section 9-301(3) of the U.C.C. *See* Coogan, *supra,* at 1382-83. The logical conclusion, though by no means an inevitable one, is that Congress intended the phrase "judgment lien" to mean the interest, arising from a judgment (as opposed to assignment, for example), that a lien creditor has in a given property.[4] This conclusion is further

_____

[4]Highlander's strongest attack on this conclusion is that a previous version of the bill that eventually became the FTLA defined "security interest" in terms equivalent to those used in the U.C.C., but that this language was deleted from the bill. *Compare* 26 U.S.C. § 6323(h)(1) (enacted definition of security interest) *with* H.R. 11256, 89th Cong. § 101 (1966) (version initially introduced by Rep. Mills) (providing in 26 U.S.C. § 6323(h)(4) that "[a] security interest shall be deemed to arise at the time when it becomes protected under local law as against a subsequent lien upon such property obtainable by legal or equitable proceedings on a simple contract"), *reprinted in Legislative History, supra,* at 50. Highlander infers that Congress must have intended to develop the law in a way that is inconsistent with the UCC lien creditor analysis. Congress, however, could have modified the language for other reasons. According to Coogan, "[a]pparently, in an effort to conform the language of other parts of section 6323 to that of subsection (a), where "judgment lien creditor' is not inappropriate, the language was changed by Treasury draftsmen who understandably knew more tax law than lien law." Coogan, *supra,* at 1389. Moreover, that the drafters of the statute substituted ambiguous language to more accurate language in a previous version of the bill does not inevitably lead to the conclusion that Congress rejected the analysis consistent with the more accurate language. Congress might have failed to realize that the new language is ambiguous and might have intended no change in the substantive provision. In short, while the change in statutory language

supported by the fact that it gives effect to Congress's "specific legislative intent ... to enable creditors to protect certain types of security interests against subsequent federal tax liens, and to do so by taking the same steps already necessary under state law to protect their interests against various other types of competing claims."[5] *Dragstrem,* 549 F.2d at 26.

In short, we are faced with two possible interpretations of an ambiguous phrase that Congress used in the FTLA. *Cf. Texas Oil & Gas Corp.,* 466 F.2d at 1047 (5th Cir.1972) ("The phrase "protected against a judgment lien' is not a term of art easily adaptable to the sometimes equally unartful language of the Uniform Commercial Code."); David G. Epstein & Steve H. Nickles, *Debt: Bankruptcy, Article 9 and Related Laws,* 521 n.56 (1994) (stating that "[t]he use of the term "judgment lien' was unfortunate") *quoted in* Zinnecker, *supra,* at 606 n. 90; Coogan, *supra,* at 1388 (characterizing the phrase "judgment lien" as "baffling language"). Although we believe that the interpretation offered by the Government is the better one,[6] we need not resolve this case solely

---

casts some doubt on the Government's interpretation, it is not dispositive of the issue in this case, at least in light of the total absence of any explanation of the change in the voluminous legislative history of the FTLA.

[5]When the security interest covers personal property, as it does here, the steps already necessary under state law to protect the interest from other types of competing claims include perfecting the security interest by filing a UCC-1 statement or other means.

[6]We reach this conclusion because the Government's interpretation is logical and comports with the stated purpose of the statute, while Highlander's interpretation is unconvincing. As presented by Highlander, the meaning of the phrase "judgment lien" in section 6323(h)(1) is derived from what the Supreme Court of Florida labels as a judgment lien. Accepting

on the basis of the statutory analysis described above. Congress has entrusted the administration of the Internal Revenue Code, which includes the FTLA, to the United States Department of Treasury and the IRS. In construing an administrative (or regulatory) statute, we are guided by the framework of analysis set out by the Supreme Court in *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). "First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Id.* at 842-43, 104 S.Ct. at 2781. If Congress did not express its intent unambiguously, we defer to the agency's interpretation if it "is based on a permissible construction of the statute." *Id.* at 843, 104 S.Ct. at 2782.

As we have already stated, we believe that Congress did not express its intent unambiguously when it used the phrase "judgment lien" in section 6323(h)(1). Department of Treasury regulations,

Highlander's interpretation leads to two equally unlikely results: First, Congress could have chosen Florida's interpretation as the federal standard, a result that has no support whatsoever in the statute or elsewhere. Moreover, as we already discussed, this result essentially reduces the phrase "judgment lien" to "simple judgment," thus reading the word "lien" out of the statute. Second, Congress could have intended for the meaning of the phrase to be governed by each state's understanding of what a judgment lien is, a result that defeats the FTLA's purpose of uniformity. *Cf. United States v. Gilbert Assocs.,* 345 U.S. 361, 364, 73 S.Ct. 701, 703, 97 L.Ed. 1071 (1953) (stating, in the context of a predecessor to the FTLA, "A cardinal principle of Congress in its tax scheme is uniformity, as far as may be. Therefore, a "judgment creditor' should have the same application in all the states").

however, define "judgment lien" as "a lien held by a judgment lien creditor." Treas. Reg. § 301.6323(h)-1(a)(2).

> The term "judgment lien creditor" means a person who has obtained a valid judgment, in a court of record and of competent jurisdiction, for the recovery of specifically designated property or for a certain sum of money. In the case of a judgment for the recovery of a certain sum of money, a judgment lien creditor is a person who has perfected a lien under the judgment on the property involved.... If recording or docketing is necessary under local law before a judgment becomes effective against third parties acquiring liens on real property, a judgment lien under such local law is not perfected ... until the time of such recordation or docketing. If under local law levy or seizure is necessary before a judgment lien becomes effective against third parties acquiring liens on personal property, then a judgment lien under such local law is not perfected until levy or seizure of the personal property involved.

Treas. Reg. § 301.6323(h)-1(g). In short, the regulation codifies the interpretation of "judgment lien" that the Government advocates in this case and that we have already determined is not only permissible, but also is the better interpretation. This interpretation holds that a judgment lien is equivalent to the interest of a UCC lien creditor. Under the second step of *Chevron*, we must defer to the Department's interpretation.

Because Highlander's interest in the interpleaded funds was unperfected under Florida law on July 3, 1986, it was subordinate to that of a UCC lien creditor. *See* Fl. Stat. ch. 679.301(1)(b). Highlander's interest, therefore, was not protected under local law against a judgment lien arising on that date; it was not a "security interest" within the meaning of 26 U.S.C. § 6323(h)(1). The Government's tax lien is entitled to priority.

## III. CONCLUSION

This appeal involves a priority contest between an unperfected security interest and a federal tax lien. The district court held

that the tax lien takes priority.  The case turns on whether the security interest is protected under local law against a "judgment lien";  if the answer is no, the tax lien takes priority.  Because we hold that a judgment lien is equivalent to the interest of a UCC lien creditor, we conclude that the unperfected security interest at issue here is subordinate to a judgment lien under local law. Therefore, the federal tax lien is entitled to priority. Accordingly, we AFFIRM.